### 56714, 56715. WEST v. FEDERAL DEPOSIT INSURANCE CORPORATION; and vice versa.

QUILLIAN, Presiding Judge.

The Federal Deposit Insurance Corporation brought suit against A. Davidson West, individually, to recover overdrafts in the amount of $36,715.15 on checking account No. 0100201913-01 at the Hamilton Bank & Trust Company. The defendant answered, denying the material allegations of the complaint. Both sides moved for summary judgment and after a hearing the trial judge granted the plaintiff's motion for summary judgment and denied that of the defendant. In Case No. 56714 the defendant appeals from the judgment granting the plaintiff's motion for summary judgment and denying his motion for summary judgment. In Case No. 56715 the plaintiff cross appeals and enumerates as error the failure to strike two affidavits offered in support of the defendant's motion for summary judgment.

This case arises out of the Hamilton Bank being placed in receivership on October 8, 1976 by the Department of Banking & Finance of the State of Georgia. On that same day the FDIC was appointed receiver of the Hamilton Bank. Pursuant to 12 USCA § 1823 (e) (Sept. 21, 1950, c. 967, § 2 [13], 64 Stat. 885) the FDIC in its corporate capacity as insurer of the Hamilton Bank purchased certain assets of that bank from the receiver for over twenty-two million in cash. This included the overdraft account in issue here.

The following facts comprise the basis of the instant litigation. In November, 1975, the Davidson Land Company of which A. Davidson West was the president, obtained a loan in the amount of $250,000 from the Hamilton Bank & Trust Company. The money was obtained for the purchase and improvement of certain residential property in Florida. The instruments

executed between Hamilton Bank and Davidson Land Company were signed "Davidson Land Company by A. Davidson West, President." At about this same time a checking Account No. 0100201913-01 was opened with the Hamilton Bank. The signature card contained the following information" "Name of Corporation: Davidson-Sarasota; Acct. No. 0100201913-01; Mr. A. Davidson West will sign X A. Davidson West [signature] as Pres." The bulk of the money from the $250,000 loan to Davidson Land Company was utilized in order to close the sale of the realty. The remainder, less than $70,000 was channeled to the checking account apparently on a draw basis as needed. According to the defendant's version of what transpired, the officers of Hamilton, recognizing that Davidson Land Company needed additional funds for improvements to the property, permitted the account to be overdrawn and agreed to treat the overdrafts as a loan which would be settled when the property was sold.

The plaintiff contends that the checking account was the individual account of the defendant and that he is therefore responsible for the overdrafts. The defendant contends that in reality the checking account was that of Davidson Land Company operating under the trade name of Davidson-Sarasota and that the corporation and not he was responsible for the overdrafts.

The checks which constituted the overdrafts were basically in the following form. They were headed "Davidson-Sarasota," followed by the street address, phone number and a city address — Atlanta, Georgia. They were signed uniformly "A Davidson West" with no designation such as president or agent, etc.

1. We dispose summarily of the defendant's contention regarding an oral agreement with the Hamilton Bank by which the overdrafts were to be treated as a loan from the bank to Davidson Land Company. "No agreement which tends to diminish or defeat the right, title or interest of the Corporation [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) *shall be in writing,* (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder,

including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank." (Emphasis supplied.) 12 USCA § 1823 (e).

This section is apparently a codification of the decision in D'Oench, Duhme & Co., Inc. v. FDIC, 315 U.S. 447 (62 SC 676, 86 LE 956) which held that oral agreements between debtors and failed banks will not be enforced against the FDIC. Hence, any parol agreement between Hamilton Bank and the defendant was unenforceable as against the plaintiff.

2. The crucial issue in the case is the identity of the checking account depositor. The signature card lists "Davidson-Sarasota" with the defendant signing as president. Since Davidson-Sarasota was shown by extrinsic evidence not to be a corporation, it must be determined whether the depositor was Davidson Land Company or the individual defendant. The bank's records are not conclusive in this regard but remain ambiguous. In this posture was summary judgment properly granted to the plaintiff? We find the ruling to be in error and reverse.

(a) It is argued that the defendant West is personally obligated on the checks he signed under Code Ann. § 109A-3—403 (Ga. L. 1962, pp. 156, 257). Cited as authority for this proposition is Seamon v. Acree, 142 Ga. App. 662 (236 SE2d 688) where this court answered affirmatively the question "when an instrument which has the name of a corporation printed on it is signed by an individual without additional language setting forth a representative capacity, is the individual personally liable on the obligation evidence by the instrument?"

It should be observed that in the Seamon case it was further pointed out that the "except as otherwise established" clause in Code Ann. § 109A-3—403 (2) has been held to authorize the admission of parol evidence to prove the signature was made in a representative capacity, as between original parties to the instrument.

In our consideration of the issues raised a brief summary of the relationship between the bank and its depositor is pertinent. The bank owes money to its depositor and becomes a debtor of the depositor. As a result, it is obligated to pay checks when drawn by its customer. *Williams v. American Surety Co.,* 83 Ga. App. 66, 70 (62 SE2d 673); 2 Bender UCC 1-33, 1-34, § 1.09 (2); 10 AmJur2d 301, 514, Banks, §§ 339, and 538. The bank, as drawee of the check, is not the holder of the instrument so as to become the beneficiary of provisions under the UCC relating to a holder and holder in due course. For authority regarding a bank as not being a holder of the instrument, see 11 AmJur2d 395, Bills and Notes, § 371. Also, as drawee there is a sound basis for considering the bank an original party to the instrument within the meaning of Code Ann. § 109A-3—403 (2) permitting parol evidence to establish the capacity in which one signed.

Moreover, there are further cogent reasons why Code Ann. § 109A-3—403 does not entitle the plaintiff to prevail as a matter of law.

The checks in the case sub judice are not the basis for the action since they do not comprise the debt owed by the depositor to the bank. Instead the checks are merely evidence of the underlying obligation owed by the depositor upon the bank's payment of the checks. "Where a check is paid by the bank on which it is drawn, the transaction is effectually closed, the check is retired, and the liability of all parties thereto is discharged; the check then becomes dead to the commercial world and represents mere evidence of a past indebtedness that has been extinguished by the payment." 9 CJS 700, Banks and Banking, § 352. "[A] bank which properly pays checks drawn on it . . . extinguishes its liability to the depositor to the extent of the sums so paid, so that it may charge his account with the amount of such payment." 9 CJS 700, Banks and Banking, § 353.

"As against its customer, a bank may charge against his account any item which is otherwise properly payable from that account even though the charge creates an overdraft." Code Ann. § 109A-4—401 (1) (Ga. L. 1962, pp. 156, 303). As pointed out in the Official Code Comment §

4-401:1 "It is fundamental that upon proper payment of a draft the drawee may charge the account of the drawer. This is true even though the draft is an overdraft since the draft itself authorized the payment for the drawer's account and carries an implied promise to reimburse the drawee." This court has held: "With respect to an overdraft, the general rule seems to be that a bank may recover the amount of an overdraft from a depositor in the same manner in which it could recover an amount loaned to a customer in the regular course of business. Paton's Digest of Legal Opinions, Vol. 3, Overdrafts, § 3, p. 3058; 9 CJS, Banks and Banking, § 353 b, p. 703. A bank paying an overdraft for a depositor may maintain an action therefor against him in indebitatus assumpsit." *Brackett v. Fulton Nat. Bank,* 80 Ga. App. 467, 469 (56 SE2d 486). See 10 AmJur2d 625, Banks, § 655.

In this case the cornerstone of the agreement between the bank and its depositor was the signature card. The checks merely constituted evidence that the bank paid them under the agreement but they did not constitute negotiable instruments insofar as the relationship between the bank and its depositor were concerned. The customer became indebted to the bank upon its payment of the overdrafts not because of the promise to pay on the checks themselves but the implied promise to reimburse the bank for paying the checks as the bank contracted to do. Under the facts of this case, there are no grounds for holding that Code Ann. § 109A-3—403 established as a matter of law that the defendant West acted as an individual rather than as an agent for the corporation.

(b) The FDIC is contending and introduced evidence to show that Davidson-Sarasota was merely the trade name under which A. Davidson West operated individually. The defendant West counters this assertion by endeavoring to show that in actuality David-son-Sarasota was a trade name of Davidson Land Company.

In consideration of this issue, we find that 12 USCA § 1823 (c) is designed to prohibit one from defeating the FDIC's claim to assets by asserting a secret or undisclosed agreement contrary to what the bank's records show the

agreement to be. Compare Dasco, Inc. v. American City Bank & Trust Co., N.A., 429 FSupp. 767; FDIC v. Vogel, 437 FSupp. 660, 663; FDIC v. Wainer, 4 Ill. App. 2d 233 (124 NE2d 29, 31); FDIC v. Meo, 505 F2d 790, 792. As the cases observe, this is predicated on public policy. Under the circumstances here the FDIC could not recover from the defendant West individually based on the bank's records which show the claimed assets are the obligation of Davidson-Sarasota.

Since parol evidence is necessary on behalf of the FDIC to establish that the checking account in question was not a corporate one but instead that of an individual we see no basis to apply the Federal Act to prohibit parol evidence as against the FDIC.

The identity of Davidson-Sarasota must be ascertained from extrinsic facts, and both sides are entitled to introduce such evidence in their behalf. Therefore, evidence as to the identity of the bank's depositor would not constitute a parol agreement tending to diminish or defeat the FDIC's interest in an asset acquired under 12 USC § 1823 (c).

(c) Although not expressly argued, the plaintiff does, in effect, rely on the provisions of the Georgia Code which voids a contract and makes an agent individually liable where he signs for a nonexistent principal. Code Ann. § 4-410 (Ga. L. 1955, pp. 346, 347).

The rule holding an agent individually responsible where he acts for a nonexistent principal is derived from the case law and subsequently included in our statutes. See *Shiflett v. John W. Kelly & Co.,* 16 Ga. App. 91 (84 SE 606); *Powers v. Brunswick-Balke-Collender Co.,* 19 Ga. App. 706 (91 SE 1062); *Hagan v. Asa G. Candler, Inc.,* 59 Ga. App. 587 (1 SE2d 693); *Dixie Drive It Yourself System v. Lewis,* 78 Ga. App. 236 (50 SE2d 843); *Brown-Wright &c. Corp. v. Bagen,* 112 Ga. App. 300, 302 (145 SE2d 294); *U. S. I. F. Atlanta Corp. v. Hagy,* 136 Ga. App. 350 (221 SE2d 227); *Evans v. Smithdeal,* 143 Ga. App. 287 (238 SE2d 278). In *Brown-Wright &c. Corp. v. Bagen,* 112 Ga. App. 300, 302, supra, it was held: " 'The disclosure of an agency is not complete for the purpose of relieving the agent from personal liability unless it embraces the name of the principal; without that, the party dealing with the

agent may understand that he intended to pledge his personal liability and responsibility in support of the contract and for its performance. Furthermore, the use of a trade name is not necessarily a sufficient disclosure of the identity of the principal and the fact of agency so as to protect the agent against personal liability.' 3 AmJur2d 677, Agency, § 320. See Saco Dairy Co. v. Norton, 140 Me. 204 (35 A2d 857, 150 ALR 1299); Anno. 150 ALR 1303. In the Norton case, supra, it was conceded that a *trade name may be used under such circumstances that agency will be sufficiently disclosed, this being a question for the trior of facts."* (Emphasis supplied.)

Here from proof offered by the plaintiff it was shown that Davidson-Sarasota was not a Georgia corporation, and was a trade name for A. Davidson West, individually. The defendant in an affidavit stated that Davidson-Sarasota was a trade name of Davidson Land Company. Whether this fact was made known to the bank is not established as a matter of law. As is always true in a case of this nature the burden was on the plaintiff, as movant, to establish the absence of any issue of material fact. A corporation acting under a trade name is not as a matter of law a nonexistent principal. As pointed out in *Brown-Wright &c. Corp. v. Bagen,* 112 Ga. App. 300, 302, supra, whether the trade name and fact of agency was sufficiently disclosed to the bank is a jury question. Hence, on this issue alone it was error to grant summary judgment in favor of the plaintiff.

3. We find that the trial judge correctly overruled the defendant's motion for summary judgment and thus there is no basis or necessity to consider whether he improperly considered two affidavits offered in support thereof. Furthermore, because our reasons for reversing the grant of summary judgment do not hinge on one of the affidavits offered in opposition thereto, the failure to strike it was not harmful error.

The cross appeal is without merit.

*Judgment reversed on the main appeal (56714); affirmed on the cross appeal (56715). Webb, P. J., and McMurray, J., concur.*

Argued October 17, 1978 — Decided February 15, 1979 —

*Moreton Rolleston, Jr., Kent T. Stair, Taylor W. Jones,* for appellant.

*Powell, Goldstein, Frazer & Murphy, Frank Mays Hull, Robert W. Patrick,* for appellee.

### ON MOTION FOR REHEARING.

On motion for rehearing by the FDIC we are cited cases which have been previously considered and found to be inapposite and not controlling. These cases hold that a bank may become a holder of a check issued by or drawn on another bank. As stated in *Pazol v. Citizens Nat. Bank of Sandy Springs,* 110 Ga. App. 319, 320 (138 SE2d 442), where a bank credits to the deposit of its customer a check drawn on another bank and where the depositor withdraws substantially the entire proceeds of such check before the bank has notice of any infirmity, then the bank has given value and becomes a holder in due course of the check. See *Tidwell v. Bank of Tifton,* 115 Ga. App. 555 (155 SE2d 451); *Bob's Radio Service, Inc. v. F. P. Plaza, Inc.,* 125 Ga. App. 133, 134 (186 SE2d 552). In the case sub judice, unlike the other cases, the bank *on which the checks are issued* is claiming the status of a holder in due course.

It is contended that the authority we have cited is outdated since it was prior to the adoption of the Uniform Commercial Code. The assertion that the U. C. C. definition of holder is a departure from that of the Uniform Negotiable Instruments Law is refuted by the Official Code Comment § 1-201:1 (20) which describes the definitions as "similar."

Under the facts, it strains credulity to argue that a finding is demanded that the bank was a holder in due course of negotiable instruments, and is entitled to foreclose all defenses including the fact as to the actual identity of its depositor. Here the drawee bank was acting under a signature card which showed its depositor to be "Davidson-Sarasota" signed by "A. Davidson West, Pres."

By paying checks signed by an individual (without the designation "Pres.") it was acting contrary to the express agreement. Moreover, although it could under Code Ann. § 109A-4—401 (1) (Ga. L. 1962, pp. 156, 303), pay checks even though the charge created an overdraft, it was not required to do so. The bank chose to pay the overdrafts, thus in effect loaning money to its depositor. The single question remaining is to whom did it make such loan?

Since the FDIC, acting for the bank, has chosen to assert by parol evidence that the deposit agreement was not between it and a corporate customer but instead an individual, we adhere to our ruling that the customer is not barred by provisions of the UCC from offering parol evidence with regard to the account on which the checks were drawn and the capacity in which they were executed.

*Motion for rehearing denied.*