## 34984. FEDERAL DEPOSIT INSURANCE CORPORATION v. WEST.

BOWLES, Justice.

We granted certiorari to review the case of *West v. Federal Deposit Ins. Corp.,* 149 Ga. App. 342 (254 SE2d 392) (1979) and to consider the following issues:

(1) Whether a drawee bank can become a holder in

due course of a check drawn on itself under the present provisions of the Uniform Commercial Code, and (2) whether parol evidence is admissible to explain that a signature on a check not indicating agency status in fact does represent such agency status.

The facts of this case are set out in the opinion of the Court of Appeals but basically are these: Checking Account No. 0100201913-01 was opened in the Hamilton Bank & Trust Company. The signature card included the following information: "Name of Corporation: Davidson-Sarasota, Account No. 0100201913-01, Mr. A. Davidson West will sign X A. Davidson West [Signature] as Pres." Davidson-Sarasota is not a corporate name but is a trade name. Mr. West signed many checks on this account creating overdrafts in the amount of $36,715.15. The checks were imprinted "Davidson-Sarasota" and included the encoded account number. Mr. West signed the checks "A. Davidson West" and did not add the language "as Pres." Hamilton Bank & Trust Company was subsequently placed in receivership and the FDIC was appointed receiver. Certain assets of the Bank were sold to an ongoing bank. The FDIC in its corporate capacity as insurer purchased the other assets including the above-mentioned overdrawn checking account. FDIC sued A. Davidson West in his individual capacity since that is the way he signed the checks.

The FDIC was granted summary judgment in the trial court but the Court of Appeals reversed. We affirm the Court of Appeals' decision to reverse the grant of summary judgment but cannot approve all of what was said in its opinion.

In the course of its opinion the Court of Appeals makes the statement that a drawee bank could not be a holder or a holder in due course. While we believe that holding is not vital to this case, we were concerned about its impact on future cases. As authority for its statement the Court of Appeals cited 11 AmJur2d 395, 396, Bills and Notes, § 371. We note, as the FDIC points out, that the cases upon which AmJur relied in making its statement were pre-UCC cases. We also note that since the UCC has been enacted, several courts in other jurisdictions have held that drawee banks can be holders in due course under

its provisions. Roland v. Republic National Bank of Dallas, 463 SW2d 747 (Tex. Civ. App., 1971); Nida v. Michael, 34 Mich. App. 290 (191 NW2d 151) (1971); See also Met Frozen Food Corp. v. National Bank of North America, 89 Misc.2d 1033 (393 NYS2d 643) (1977). Unfortunately, the cases do not discuss the issue in depth nor indicate why the rule might be different than the pre-UCC rule.

We have carefully studied all sections of Articles 3 and 4 of the UCC along with their official comments to try and determine what the drafters' intent might have been. We find no direct answer but rather discover that some sections and comments seem to indicate one answer while others indicate another. We conclude that there is no compelling reason that a bank cannot be a holder or a holder in due course of an instrument drawn on it if it meets all the qualifications of the status. One simple way for a drawee bank to gain holder in due course status would be to take the instrument from a transferor who is a holder in due course. Code Ann. § 109A-3—201. One of the most useful occasions to assert holder in due course status would be in a case *similar* to the case at bar. If a drawee bank turns money over to a collecting bank who is a holder in due course on an instrument which would overdraw the drawee bank's customer's account, it has turned over its own money on the instrument. While the drawee bank has a remedy against its customer under Code Ann. § 109A-4—401, we conclude that it also has a remedy on the instrument *against the drawer*[1] provided the drawee does not give up possession of the instrument.[2] A drawee bank cannot sue on an instrument as a holder in due course if it does not continue to be a holder.

While the record is not clear in the case at bar, it

---

[1] In this specialized kind of situation, an instrument may not be "commercially dead" as soon as a drawee bank "pays" it as stated by the Court of Appeals.

[2] The drawee bank must also meet all other requirements of the UCC for holding a drawer liable on a draft. See Code Ann. §§ 109A-3—507 (Dishonor), 109A-3—508 (Notice of Dishonor), etc.

seems likely that the checks in issue here were returned to the bank's customer in its bank statement. If the bank has given up possession of the instruments, it is no longer a holder of them. Since this case is being reversed for further proceedings, that issue may still be developed.

For now we will assume that the instruments causing the overdrafts were returned to the bank's customer. The drawee bank, having elected to pursue its remedy of charging its depositor's account under Code Ann. § 109A-4—401, must look to its depositor for repayment. The deposit agreement, if any, the signature card and the checks drawn against the account are the contract documents between the bank and the customer. The identity of the depositor, Davidson-Sarasota, as amplified by the signature card and the checks drawn on that account number, in this case is ambiguous[3] and so parol evidence is necessary to determine the correct identity. Code Ann. § 109A-3—403 is not involved as this is not a suit on the instrument itself but rather on the underlying debt caused by the overdrafts.[4]

*Judgment affirmed. All the Justices concur, except Jordan, J., who concurs in the judgment only, and Nichols, C. J., Hall and Hill, JJ., who concur specially.*

ARGUED SEPTEMBER 10, 1979 — DECIDED SEPTEMBER 27, 1979.

*Powell, Goldstein, Frazer & Murphy, Robert W. Patrick, Frank Mays Hull, Thomas S. Richey,* for

---

[3]West asserts that Davidson-Sarasota is a trade name for a corporation, Davidson Land Company. The FDIC claims it is a trade name for West himself.

[4]If this were a suit on the instrument itself, parol evidence would not be admissible to show that Mr. West signed his name in a representative capacity since the instrument neither named the person represented nor showed that the representative signed in a representative capacity. Code Ann. § 109A-3—403. *Southern Oxygen Supply Co. v. de Golian,* 230 Ga. 405 (197 SE2d 374) (1973).

appellant.

*Taylor W. Jones, Michael R. Uth, Moreton Rolleston, Jr.,* for appellee.

HALL, Justice, concurring specially.

I agree that the Court of Appeals correctly reversed the summary judgment granted by the trial court to the Federal Deposit Insurance Corporation. If the FDIC is attempting to recover from Davidson West on the checks themselves, then it is not entitled to summary judgment because the FDIC has neither placed the checks in evidence nor alleged that it is in possession of the checks. To establish status as a "holder" and sue on a negotiable instrument, possession is the first requirement. Code Ann. § 109A-1—201 (20); Lloyd v. Lawrence, 472 F2d 313 (5th Cir. 1973). Although suits to enforce negotiable instruments are among the most suitable types of cases for summary judgment, 6 Moore's Federal Practice, ¶ 56.17[8], the FDIC must first establish that it is in possession of the instruments.[1] Lloyd v. Lawrence, supra. Because the FDIC has not alleged possession of the checks or placed them into evidence, any determination by either this court or the Court of Appeals about the holder or holder in due course status of the FDIC in particular or of a drawee bank in general is premature.

If the FDIC's alternative theory of recovery is that West is obligated on the checks as its depositor, then it is still not entitled to summary judgment. Code Ann. § 109A-4—401 (1) states that "[a]s against its customer, a bank may charge against his account any item which is otherwise properly payable from that account even though the charge creates an overdraft." The Official Comment states that the draft itself authorizes payment from the account "and carries an implied promise to reimburse the drawer." The account was opened in the name of "Davidson-Sarasota," not Davidson West. The

---

[1]Exceptions to the requirement of possession do exist. Code Ann. § 109A-3—804; Scheid v. Shields, 269 Ore. 236 (524 P2d 1209) (1974); Laurel Bank & Trust Co. v. Sahadi, 32 Conn. Supp. 172 (345 A2d 53) (1975).

true identity of the depositor can not be resolved on a motion for summary judgment; therefore, the Court of Appeals was correct in requiring a trial of the case on this issue.