### In the Matter of GEORGIA STEEL, INC., Debtor.

### AMERON PROTECTIVE COATINGS DIVISION, Plaintiff,

### v.

### GEORGIA STEEL, INC. and Central Bank of Georgia, Defendants.

Bankruptcy No. 81–50966.
Adv. No. 81–5199.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Sept. 10, 1982.

Jerome L. Kaplan, Ward Stone, Jr., B. Michael Byrd, Kaplan & Thomason, P.A., Macon, Ga., for debtor in possession.

Paul W. Bonapfel, Cotton, White & Palmer, P.A., Atlanta, Ga., for Ameron Protective Coatings Division.

G. McGregor Jordan, Jr., Harris, Watkins, Davis & Chambless, Macon, Ga., for Central Bank of Georgia.

## MEMORANDUM OPINION ON COMPLAINT FOR RELIEF FROM STAY

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

### FACTUAL BACKGROUND

The majority of the facts in this case were stipulated by the parties. On or about April 14, 1981, Ameron Protective Coatings Division (Ameron) obtained a judgment against Georgia Steel, Inc. (Georgia Steel) in the State Court of Bibb County, Georgia. The judgment, including interest and costs, was in the amount of $7,749.39. Pursuant to the judgment, execution issued and was recorded on the general execution docket of the Superior Court of Bibb County on May 6, 1981.

On August 10, 1981, Ameron filed an affidavit for garnishment in the State Court of Bibb County for $7,983.41.[1] A summons of garnishment was issued by the clerk of the state court and subsequently was served on the Central Bank of Georgia (Central Bank) on August 13, 1981. On the date of service, Georgia Steel's general account at the Central Bank had an ending balance of $12,861.19, and there was no debt owed to the bank by Georgia Steel.

Upon service of the summons of garnishment, the Central Bank debited the general account of Georgia Steel for $7,973.91 and credited that amount to its general cashier's check fund.[2] Georgia Steel was notified by the Central Bank that because of the garnishment, the bank was placing a hold on Georgia Steel's general account for forty-five days.[3]

After debiting the $7,973.91 and despite notifying Georgia Steel that a hold was being placed on its general account, the Central Bank continued to pay checks drawn by Georgia Steel on the general account. On August 26 and 27, 1981, the general account had a negative balance (overdraft), and from August 31 to September 18, 1981, the general account also showed a negative balance. After the Central Bank was served with the summons of garnishment, the bank continued to pay checks drawn on the general account even though it knew that payment would occasionally result in the general account of Georgia Steel being overdrawn.

On September 3, 1981, Georgia Steel filed its bankruptcy petition with this Court under Chapter 11 of Title 11 of the United States Code. At that time, Georgia Steel's general account at the Central Bank had a negative balance of $12,251.11.

On September 25, 1981, the Central Bank filed an answer to the garnishment action in the State Court of Bibb County. The answer stated that the funds the Central Bank held in its cashier's check fund as a result of the garnishment summons were not subject to garnishment but instead properly belonged to the Central Bank because of the bank's right of set-off. The answer further stated that the garnishment

---

1. The garnishment was for the larger amount because of garnishment costs and increased interest on the judgment.

2. A garnishment summons does not name any specific account from which it should be satisfied. In this instance, the Central Bank withdrew the $7,973.91 from Georgia Steel's general account because that account contained sufficient funds to satisfy the summons. Georgia Steel also maintained a payroll account at the Central Bank.

3. A similar procedure was followed with respect to another summons of garnishment served upon the Central Bank on August 27, 1981. The garnishing creditor was Corporate Group Services, Inc. The bank debited $1,532.46 from Georgia Steel's general account and placed that amount in its cashier's check fund.

action had been stayed by the filing of the bankruptcy petition.

On or about September 30, 1981, Ameron filed a traverse to the Central Bank's answer in the garnishment action, asserting that the bank's answer was untrue or legally insufficient. The traverse admitted that the garnishment was stayed by the filing of the bankruptcy petition.

On October 1, 1981, Ameron filed a complaint with this Court, naming as defendants both the Central Bank and Georgia Steel. The complaint asserts that the $7,973.91 held by the Central Bank is cash collateral of Georgia Steel upon which Ameron has a lien.[4] Ameron requests that the automatic stay of the Bankruptcy Code be lifted so that it may collect the $7,973.91 from the Central Bank. Alternatively, Ameron requests that Georgia Steel's use of the money be conditioned so as to provide adequate protection to Ameron. Ameron also requests that its lien on the $7,973.91 be preserved for the benefit of the estate, if the transfer is found to be a voidable preference. Finally, Ameron requests an award of costs.

Georgia Steel's answer to the complaint denies Ameron's contentions and asserts a counterclaim against Ameron. The counterclaim asserts that Ameron's failure to dismiss the garnishment proceeding was a violation of the automatic stay of the Bankruptcy Code. Georgia Steel requests that the Court issue a citation for contempt against Ameron and that the Court order Ameron to dismiss the garnishment proceeding. Georgia Steel also requests that the Court order Ameron to pay Georgia Steel's costs and attorney's fees.

Georgia Steel's answer also sets up a cross-action against the Central Bank. The cross-action asserts that the Central Bank is a custodian of the $7,973.91 that it has segregated as a result of the summons of garnishment, and asserts that the Bankruptcy Code requires the Central Bank as custodian to turn over the funds to Georgia Steel.[5] Accordingly, Georgia Steel requests that the Court order the Central Bank to turn over the $7,973.91 to it as the debtor in possession. Georgia Steel also requests that it recover from the Central Bank costs and attorney's fees incurred in compelling the turnover.

The answer of the Central Bank to Ameron's complaint asserts that the Court lacks subject matter jurisdiction over this adversary proceeding because it is not related to Georgia Steel's Chapter 11 case. The Central Bank asserts that Ameron's complaint seeks to determine only whether the Central Bank or Ameron is entitled to the $7,973.91, and that therefore the issue does not involve the rights of the bankruptcy estate or the debtor in possession. The Central Bank also requests that it recover reasonable costs and attorney's fees from Ameron.

In its answer to the cross-action of Georgia Steel, the Central Bank asserts that it is entitled to set off the $7,973.91 against the $12,251.11 overdraft which existed in Georgia Steel's general account on September 3, 1981, the date Georgia Steel filed its bankruptcy petition. Additionally, the Central Bank requests that it recover from Georgia Steel the costs and attorney's fees incurred by the bank in defending the cross-action.

In answer to the contempt counterclaim of Georgia Steel, Ameron asserts that Georgia Steel is estopped to complain of Ameron's failure to dismiss the garnishment proceeding because Ameron had consulted with Georgia Steel about how to proceed in the garnishment case. Ameron therefore requests that the counterclaim be dismissed. Ameron asserts that it specifically inquired as to whether Georgia Steel considered Am-

4. 11 U.S.C.A. § 363(a) (West 1979) defines "cash collateral" as "cash, negotiable instruments, documents of title, securities, *deposit accounts,* or other cash equivalents in which the estate and an entity other than the estate have an interest." *Id.* (emphasis added). The Bankruptcy Code prohibits the debtor in possession from using cash collateral unless each entity having an interest in the cash collateral consents or the Court, after notice and a hearing, authorizes such use. 11 U.S.C.A. § 363(c)(2) (West 1979).

5. 11 U.S.C.A. § 543(b)(1) (West 1979).

eron's failure to dismiss to be a violation of the automatic stay of the Bankruptcy Code.

On November 25, 1981, Ameron was granted permission to amend its complaint. The amendment requests that the Court order Georgia Steel to begin proceedings to avoid the judgment liens of various creditors and to preserve those liens for the benefit of the estate. The amendment also requests that the garnishment proceeding be removed to this Court. Georgia Steel's answer to the amended complaint asserts that there are no avoidable liens because Georgia Steel was solvent on the date it filed its bankruptcy petition.[6]

## ANALYSIS AND CONCLUSIONS OF LAW

The issues before the Court are varied. The Court must determine, among other things, whether it has jurisdiction over this adversary proceeding, whether continuation of the garnishment proceeding constitutes grounds for contempt, and whether any of the parties are entitled to awards of attorney's fees. The Court also must determine who is entitled to the $7,973.91. Determination of these issues also requires decisions on various subissues.

■ The Central Bank has asserted that this Court does not have subject matter jurisdiction. The United States Code gives a bankruptcy court jurisdiction over "all civil proceedings arising under Title 11 or arising in or related to cases under Title 11." 28 U.S.C.A. § 1471(b) (West Supp. 1982).

The Court is of the opinion that the instant controversy is related to Georgia Steel's bankruptcy case under Chapter 11 of Title 11. Georgia Steel as debtor in possession has asserted a claim to the $7,973.91, and whether its claim is superior to that of the Central Bank or Ameron relates to the bankruptcy case. In order properly to determine the claim of Georgia Steel to the $7,973.91, it is necessary for the Court to consider the claims of the Central Bank and

Ameron, and thus the respective claims of the Central Bank and Ameron necessarily relate to the bankruptcy case. No matter which party wins, the interests of Georgia Steel are affected. Therefore, the Court holds that the instant controversy is related to the Chapter 11 case of Georgia Steel, and the Court has jurisdiction under 28 U.S.C.A. § 1471.

Georgia Steel asserts that Ameron violated the automatic stay of the Bankruptcy Code by its failure to dismiss the garnishment proceeding in the State Court of Bibb County. The Court is of the opinion that Ameron did not violate the automatic stay by its failure to dismiss the garnishment proceeding. The automatic stay provision of the Bankruptcy Code is found in section 362 of the Bankruptcy Code, and that section prohibits:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

. . . .

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title, . . .

11 U.S.C.A. § 362(a)(1)(4), and (5) (West 1979).

In this case, both the Central Bank's answer and the traverse filed by Ameron admitted that the garnishment action had been stayed by the filing of the bankruptcy petition. Ameron's traverse set up a defense as follows:

To the extent that, notwithstanding the aforesaid stay, a traverse by Plaintiff of the Garnishee's Answer is required in

---

6. A transfer is preferential under the Bankruptcy Code only if it was made while the debtor was insolvent. 11 U.S.C.A. § 547(b)(3) (West 1979).

order to preserve Plaintiff's rights herein, subject to the paramount authority of the bankruptcy court in which Defendant's Chapter 11 case is pending, Plaintiff traverses said Answer and shows that the Garnishee's Answer is untrue or legally sufficient [*sic*].

This Court has recently addressed the issue of contempt for failure to dismiss a garnishment proceeding. *Dennis v. Pentagon Federal Credit Union (In re Dennis )*, 17 B.R. 558 (Bkrtcy.M.D.Ga.1982). In that case, the garnishment proceeding was commenced after the filing of the bankruptcy case, and the garnishing creditor's attorney was notified of the prior filing in bankruptcy. Despite the notification, the garnishing creditor continued the garnishment process, and money was actually withheld from the debtor's pay. The court found that the garnishing creditor had an affirmative duty to dismiss the garnishment proceeding because it had been filed in violation of the automatic stay of the Bankruptcy Code. The court, in a footnote, pointed out that:

> The Court has considered whether the garnishment proceeding could have been stayed rather than dismissed by the Defendant's attorney. *The Defendant's attorney filed this garnishment proceeding after the filing of the Debtor's bankruptcy and thus in technical violation of the automatic stay.* It must therefore be dismissed because the whole garnishment proceeding was done in violation of Section 362 of the Bankruptcy Code.

17 B.R. at 561 n. 1 (emphasis added).

■ This case may be distinguished from *Dennis* in two ways. First, the garnishment proceeding was begun prior to Georgia Steel's filing a bankruptcy petition, whereas in *Dennis* the creditor instituted the garnishment proceeding after the debtor had filed his bankruptcy petition. Second, the parties to this adversary proceeding acknowledged in their pleadings in the garnishment proceeding that the action

was stayed because of the bankruptcy petition. Ameron's traverse was not an attempt to complete the garnishment proceeding but was rather a precaution to assure that it did not waive any of its rights.

There is no evidence in this case of any bad faith in Ameron's failure to dismiss the garnishment proceeding. Ameron *did* cease to pursue the action and admitted that the action was stayed. For these reasons, the Court is unwilling to hold that Ameron acted in contempt by failing to dismiss the garnishment proceeding and, accordingly, will not require Ameron to dismiss that proceeding.

Georgia Steel has asserted that the Central Bank should be forced to turn the $7,973.91 over to Georgia Steel. Georgia Steel contends that the bank is a custodian of the money and is therefore required by section 543 of the Bankruptcy Code, 11 U.S. C.A. § 543 (West 1979), to turn the $7,973.91 over to Georgia Steel as debtor in possession.[7] The argument is without merit.

Section 101(10) of the Bankruptcy Code, 11 U.S.C.A. § 101(10) (West 1979), defines a custodian as:

> (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
> (B) assignee under a general assignment for the benefit of the debtor's creditors; or
> (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors; . . .

Georgia Steel asserts that the Central Bank falls under subsection (C)'s definition of a custodian as an "agent under applicable law" who is authorized to take charge of a debtor's property for the purpose of enforc-

---

7. 11 U.S.C.A. § 543(b)(1) (West 1979) requires a custodian to "deliver to the trustee any property of the debtor transferred to such custodian . . . that is in such custodian's possession, cus-

tody, or control on the date that such custodian acquires knowledge of the commencement of the case."

ing a lien upon it. However, the legislative history of the section does not support that contention:

> Paragraph (11) [now (10)] defines "custodian." There is no similar definition in current law. It is defined to facilitate drafting, and means a prepetition liquidator of the debtor's property, such as an assignee for the benefit of creditors, a receiver of the debtor's property, or administrator of the debtor's property. The definition of custodian to include a receiver or trustee is descriptive, and not meant to be limited to court officers with those titles. The definition is intended to include *other officers of the court* if their functions are substantially similar to those of a receiver or trustee.

S.Rep. No. 989, 95th Cong., 2d Sess. 23 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5809 (emphasis added).

The Central Bank, in debiting Georgia Steel's account for $7,973.91, was not acting as a "liquidator of the debtor's property" or as a trustee or receiver, but was instead doing what it considered itself required to do by the garnishment summons. Additionally, the Central Bank was not acting as an officer of a court with functions substantially similar to those of a trustee or receiver, as the legislative history suggests a custodian must do.

The Eleventh Circuit has recently interpreted the term "custodian" as it is found in the Bankruptcy Code. In *Flournoy v. City Finance, Inc.,* 679 F.2d 821, 9 Bankr.Ct. Dec. 355 (11th Cir.1982), the Eleventh Circuit held that a secured creditor who had repossessed a debtor's vehicle but who was unable to complete execution before the debtor filed a bankruptcy petition was not a "custodian" within the meaning of sections 101(10)(C) of 543(b) of the Bankruptcy Code.

The trustee in *Flournoy* had argued that because the creditor had taken possession of the property for the purpose of enforcing a lien, the creditor was an "agent under applicable law" of the debtor because of the fiduciary obligations governing the sale of the collateral. The Eleventh Circuit rejected this argument, finding that under Georgia law an "agent" must be unconditionally subject to the debtor's orders. Since the creditor who had repossessed the debtor's vehicle by self-help was not unconditionally subject to the debtor's orders, it was not an agent and therefore was not a "custodian" under the Bankruptcy Code.

■ Although the holding in *Flournoy* is limited to a secured creditor who repossesses its collateral by self-help, the analysis in that case is equally applicable in this adversary proceeding. The Central Bank did not hold Georgia Steel's funds in a manner "unconditionally subject to the debtor's orders."[8] Rather, the funds were subject to set-off and to garnishment, in the ordinary course of business. Thus, the Central Bank was not an "agent under applicable law" and therefore was not a "custodian" required by section 543 to turn the $7,973.91 over to the estate.[9]

Ameron asserts that it is entitled to the $7,973.91, despite the Central Bank's claim of set-off. The Court agrees that Ameron has a valid claim to the money.

■ Under Georgia law, when the summons of garnishment is served upon the garnishee, a lien attaches to the garnished funds. The Georgia statute describing what property is subject to garnishment provides in part that:

> (a) All debts owed by the garnishee to the defendant at the time of service of summons of garnishment upon the garnishee and all debts accruing from the garnishee to the defendant from the date of service to the date of the garnishee's

---

8. The relationship between a bank and its depositor is that of debtor-creditor and not that of agent-principal. *See West v. Federal Deposit Ins. Co.,* 149 Ga.App. 342, 254 S.E.2d 392, *aff'd* 244 Ga. 396, 260 S.E.2d 89 (1979).

9. This analysis is also applicable to the request of Georgia Steel that the Central Bank be required to turn over to it the $1,532.46 set aside by the bank pursuant to the summons of garnishment served on the bank by Corporate Group Services.

answer shall be subject to process of garnishment, and no payment made by the garnishee to the defendant or to his order, or by any arrangement between the defendant and the garnishee after the date of the service of the summons of garnishment upon the garnishee shall defeat the lien of such garnishment.

Ga.Code Ann. § 46–301 (Supp.1981). The predecessor to the present garnishment statute provided that:

Whenever a summons of garnishment shall be served on any person, and such person, after the date of such service, shall become indebted to the defendant, such subsequent indebtedness immediately upon its accruing shall become subject to the lien of such garnishment, and no payments made by the garnishee to the defendant or to his order after the date of the service of the garnishment shall defeat the lien of such garnishment. The service of a summons of garnishment shall in all cases operate as a lien on all the garnishee's indebtedness at the date of the service and also on all future indebtedness accruing up to the date of the answer, and such lien shall not be defeated by any payments by the garnishee or overdrafts by the defendant or other arrangements between the defendant and the garnishee. This section shall not operate to change or alter the laws exempting from the process and liabilities of garnishment the daily, weekly, or monthly wages of journeymen mechanics and day laborers.

1901 Ga.Laws 55, *formerly codified at* Ga. Code Ann. § 46–203 (repealed). Because of the similarities between the two statutes, it is the opinion of the Court that in revising former section 46–203, the Georgia legislature did not intend to change the fact that a lien attaches to the garnished funds when the summons of garnishment is served.

Case law in Georgia also supports the conclusion that service of a summons of garnishment causes a lien to attach to the garnished funds. Two bankruptcy courts in Georgia have held that the lien dates from the service of the garnishment summons.

*See Flournoy v. Pate (In re Antley)*, 18 B.R. 207, 8 Bankr.Ct.Dec. 1229 (Bkrtcy.M.D. Ga.1982) and *Anderson v. Burnham (In re Burnham)*, 12 B.R. 286 (Bkrtcy.N.D.Ga. 1981). Further, one case from the Georgia Court of Appeals has implicitly recognized that there is a lien on garnished funds between the time the garnishment summons is served and the time the garnishee files an answer. *Florida First National Bank v. First National Bank*, 154 Ga.App. 211, 267 S.E.2d 849, 852 (1980).

■ The Central Bank has asserted that its set-off right should take priority over the garnishment lien of Ameron. The Court disagrees. While *Florida First National* holds that "the garnishment lien is subject ... to any claim or right of offset in the garnishee, at the time of the service of the summons of garnishment, or subsequently thereto up to the time for the answer ...," *Id.*, the Georgia Code limits the right to set-off by stating that "no payment made by the garnishee to the defendant or to his order ... shall defeat the lien of such garnishment." Ga.Code Ann. § 46–301(a) (Supp.1981). This statutory limitation is based upon the theory that a *garnishee* may not create a debt on the part of a defendant after the service of the summons of garnishment and then use that debt in order to defeat the lien created by the service of that summons.

In this case, the Central Bank was aware that paying the checks drawn on Georgia Steel's general account would result in a negative balance, but it paid the checks anyway. Doing so created a debt on the part of Georgia Steel to the Central Bank. The Court has been presented with no evidence that the Central Bank had an obligation to pay the checks; the bank could have returned the checks unpaid. It was in control of the account and communicated daily with Georgia Steel. Paying the checks when it knew that there were insufficient funds in Georgia Steel's account was equivalent to making a loan to Georgia Steel. This violates section 46–301's mandate that a garnishee may not defeat a lien of garnishment by making payments to the de-

fendant. Therefore, to allow the Central Bank to offset the $7,973.91 against an overdraft which it allowed to be created would be contrary to the spirit of section 46–301.[10]

Ameron has requested that the garnishment proceeding be removed to this Court. The Court sees no reason to remove that action to the bankruptcy forum. The Court has already decided the issue raised in the Central Bank's answer to the garnishment. Rather than force the parties to engage in further litigation, the Court gives Ameron judgment against the Central Bank in the amount of $7,983.41.

■ Ameron has also requested that the Court lift the automatic stay of the Bankruptcy Code so as to enable it to collect from the Central Bank. Subsection (d)(2) of section 362 allows a court to lift the automatic stay with respect to an act against property if the debtor does not have equity in the property and if the property is not necessary for an effective reorganization. Subsection (g) of section 362 allocates the burden of proof in cases of requests for relief from the automatic stay:

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C.A. § 362(g) (West 1979). Ameron has met its burden of proof by showing that it is entitled to the entire $7,973.91, thus leaving no equity for Georgia Steel. Therefore, the burden is on Georgia Steel or the Central Bank to show why the automatic stay should not be lifted.

Neither Georgia Steel nor the Central Bank has shown any reason why the stay should not be lifted. Their legal arguments have been without merit. Georgia Steel, the debtor in possession, has stated that the transfer of the lien to Ameron is *not* an avoidable transfer.[11] The Court takes judicial notice of its files and observes that Georgia Steel has filed a plan of liquidation. Thus, the $7,973.91 is not necessary for an effective reorganization. Since neither Georgia Steel nor the Central Bank has carried its burden of showing why the stay should not be lifted, the Court grants Ameron relief from the automatic stay so that it may collect the amount of its judgment from the Central Bank.

■ Ameron has asked that Georgia Steel be ordered to begin avoidance actions against various of its judgment creditors. The Court declines to issue such an order. A request that Georgia Steel be required to take action against those creditors is in effect a request for injunctive relief. The Court must therefore follow the standards for the granting of injunctive relief in deciding whether to grant Ameron's request. Requests for injunctions are never granted unless the remedy at law is inadequate and the court, after weighing the hardships to each side, determines that an injunction is proper. D. Dobbs, Remedies: Damages—Equity—Restitution § 2.10 (1973).

In this case, the situation does not warrant injunctive relief. There has been no allegation of injury and no allegation of a need for immediate relief. The Court has been shown no other claims being asserted to the $7,973.91.[12] Therefore, the Court

10. Counsel for Georgia Steel assert that the filing of the bankruptcy petition invalidated the lien on the garnished funds, citing *St. John v. Johnson,* 54 Ga.App. 89, 187 S.E. 136 (1936). The case is inapposite, being based on the former Bankruptcy Act and seeking to strike down a *preferential* transfer. The debtor itself has asserted that the transfer in this case was not preferential.

11. Georgia Steel's contention that the transfer of the lien to Ameron was not preferential eases the Court's concern over lifting the automatic stay. The Court would be hesitant to

allow Ameron use of the funds if they were only to be reclaimed later as a preferential transfer.

12. There has been presented no evidence that any judgment creditors of Georgia Steel other than Ameron and Corporate Group Services, Inc. have served garnishment summonses on the Central Bank. Service of a garnishment summons is the only way by which a creditor may gain a right to a bank account, a chose in action. *Flournoy v. Pate (In re Antley),* 18 B.R. at 209. Thus, there is no evidence of any

sees no reason to grant Ameron's request for injunctive relief.

As to the issue of whether the transfer of an interest in the $7,973.91 to Ameron was an avoidable transfer, the Court expresses no opinion. The avoidance of a transfer is a power that lies in the hands of a trustee or the debtor in possession. The debtor in possession, Georgia Steel, has denied that the transfer is avoidable and does not seek to avoid the transfer. Until the debtor in possession takes steps to have the transfer avoided, the issue of avoidance is not properly before the Court.

Each of the parties has requested an award of attorney's fees and costs. No party has shown any reason for the Court to grant it an award of costs or of attorney's fees. The Bankruptcy Code itself does not authorize such an award. Neither has any party pointed to any statute authorizing such an award.

The former Fifth Circuit has held that a prevailing party is not automatically entitled to an award of costs or attorney's fees. *Love v. Tower Loan, Inc.*, 577 F.2d 344 (5th Cir.1978). Absent some statutory provision, it must be shown that the losing party acted "in bad faith, vexatiously, wantonly, or for oppressive reasons" before a prevailing party will be awarded costs or attorney's fees. There is no evidence that any party acted in bad faith or vexatiously. Therefore, the Court declines to make any awards of attorney's fees.

immediate claim to the fund by a creditor not a party to this adversary proceeding.