In re Barry DRAYER, Debtor.

MARINE MIDLAND BANK, N.A., Plaintiff,

v.

Barry DRAYER, Defendant.

Bankruptcy No. 82-01497-HL. Adv. No. A82-1136.

United States Bankruptcy Court, D. Massachusetts.

March 31, 1983.

Robert Barber, Moulton & Looney, Boston, Mass., for debtor.

W. Thomas Fagan, Widett, Slater & Goldman, Boston, Mass., for bank.

## MEMORANDUM ON MOTION FOR SUMMARY JUDGMENT

HAROLD LAVIEN, Bankruptcy Judge.

The plaintiff, Marine Midland Bank, N.A., (Marine) has moved for summary judgment on its complaint which alleges that a 1981 New York state court order and judgment it has against the debtor is non-dischargeable under Section 523(a)(2) and (4)[1] of the Bankruptcy Code. The debtor, Barry Drayer (Drayer), requests that this Court deny plaintiff's motion because there are genuine issues of fact and also moves for partial summary judgment as to the amount of the indebtedness which could be found nondischargeable.

On January 5, 1981, Justice Cahn of the New York Supreme Court found that the debtor was liable to Marine for $248,893.59 for overdrafts on the debtor's bank account.[2] The New York action arose out of overdrafts which occurred in May, 1973. In that action the debtor had sought to raise defences of contributory negligence and estoppel. Justice Cahn ruled in favor of the plaintiff on a motion for summary judgment. He ruled that as a matter of law the debtor was liable for the overdrafts.

---

1. The bank set forth both § 523(a)(2) and (4) in its complaint as causes to bar the discharge of the bank's debt. However, the bank only argued § 523(a)(2) in its motion for summary judgment.

   Nothing as of yet presented to this Court establishes a cause of action under § 523(a)(4).

However, since further proceedings are necessary, the court will leave this issue open for the plaintiff to establish.

2. The account was held jointly with the debtor's wife. Justice Cahn ruled that the bank had failed to establish any claim against her.

The reasons advanced for denying the liability of Barry Drayer to plaintiff are of no merit. As a bank with whom movants had a checking account, plaintiff is merely a conduit for the payment of movant's obligation. Plaintiff is specifically empowered to pay overdrafts (U.C.C. 4–401), that is, to honor movants' checks even though the deposit against which said checks were drawn have not yet cleared. In honoring such overdrafts, plaintiff takes certain risks, e.g., the risk that the deposits will not be paid by the bank on which they are drawn and, if not so paid, the risk that the maker of the check may not be able to reimburse plaintiff. However, any loss resulting from an overdraft must fall, as a matter of law, on the one who caused the overdraft. Here, movant Barry Drayer unquestionably caused the overdrafts, and it is he who must be liable for the consequences, regardless of the asserted negligence on the part of plaintiff in allowing said movant to write overdrafts, and regardless of plaintiff's asserted condonation of said movant's prior course of action in drawing checks against deposits which had not cleared. *Marine Midland Bank v. Drayer,* Supreme Court of New York, opinion of J. Cahn, at 2 (January 5, 1981).

As support for its motion for summary judgment, the bank asserts that the doctrine of collateral estoppel as applied to the state court judgment necessitates a finding of nondischargeability. Collateral estoppel bars a party from relitigating factual issues which have already been determined in another forum. *Spilman v. Harley,* 656 F.2d 224 (6th Cir.1981). While holding that res judicata would not be applicable in a dischargeability of debt proceeding, the Supreme Court has indicated that collateral estoppel may be appropriate if the state court has determined the factual issues using standards identical to those applied in bankruptcy. *Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979). Since *Brown,* other courts have held that collateral estoppel should apply in a bankruptcy proceeding when the following four tests are met: 1) the issue sought to be litigated is the same in the bankruptcy court as in the prior action; 2) the issue was actually litigated; 3) the issue was determined by judgment; and 4) the determination of that issue was essential to the judgment. *Matter of Ross,* 602 F.2d 604 (3rd Cir.1979).

In applying collateral estoppel, the first element of the test requires that there be an identity of issue component. A fraud determination under § 523(a)(2)(A)[3] requires that the following facts be established:

(1) The debtor made representation of fact to the creditor,

(2) said representations were false,

(3) the debtor knowingly and fraudulently (i.e. with intent and purpose to deceive) made such representation, and

(4) the creditor relied on the misrepresentation to its detriment.

*In re Spector,* 22 B.R. 226 (Bkrtcy.N.D.N.Y. 1982).

A finding of fraud under § 523(a)(2)(A) requires a finding of fraud in fact. Fraud in fact involves moral turpitude and intentional wrongdoing; fraud in law, which may exist without imputation of bad faith or immorality, is insufficient. *In re Spector,* 22 B.R. 226, 232 (Bkrtcy.N.D.N.Y.1982); *In re Greenblatt,* 8 B.R. 994 (Bkrtcy.E.D.N.Y. 1981); 3 *Collier on Bankruptcy* ¶ 523–08, at 523–40 (15th ed. 1982) and citations therein. In order to prevail on the theory of false pretenses or false misrepresentations by the debtor, the bank must prove that the representations were knowingly and fraudulently made. *Id.* A fraudulent intent to deceive is required. *In re Houtman,* 568 F.2d 651, 655 (9th Cir.1978); *see also Commonwealth of Massachusetts v. Hale,* 618 F.2d 143 (1st Cir.1980).

---

**3.** Section 523(a)(2)(A) provides that the debtor will not be discharged from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

Justice Cahn found that the debtor was liable as a matter of law for the overdrafts. He did not make the finding of fraudulent intent which would be necessary under § 523(a)(2)(A), and which would make collateral estoppel appropriate. Justice Cahn found that the bank was empowered to pay overdrafts pursuant to Uniform Commercial Code (U.C.C. § 4–401) and that the one who caused the overdraft is liable as a matter of law for any loss. Although Justice Cahn did not cite any cases, U.C.C. § 4–401 has been interpreted to allow the bank to enforce a debt created by an overdraft in the same manner as any loan or promissory note. *United States v. Christo*, 614 F.2d 486, 493 (5th Cir.1980); *West v. Federal Deposit Ins. Corp.*, 26 U.C.C.Rep. 1192, 149 Ga.App. 342, 254 S.E.2d 392 (1979) affirmed on other grounds 260 S.E.2d 89. Although Justice Cahn did state that the debtor was involved in a "check kiting scheme," the finding merely describes the action of the debtor in writing checks in very large amounts, depositing that check with another bank and then writing a check against that deposit before the first check has cleared; it is not a finding of fraudulent intent to deceive or the making of a false statement. *See Williams v. United States*, —— U.S. ——, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982) (a check is not a factual assertion and cannot be characterized as true or false). The plaintiff cites the case of *Stevens v. United States*, 227 F.2d 5 (8th Cir.1955) to stand for the proposition that a finding of a check kiting scheme is equivalent to a finding of fraud. In *Stevens*, the court affirmed a jury finding that a check kite was a willful scheme to defraud. While it may be true that check kiting is commonly found to be fraudulent conduct, such a determination was neither made nor was it essential to the finding of liability, and is an issue of fact which has not yet been determined. Because the state court did not make the finding of fraud in fact, collateral estoppel is not appropriate.

The plaintiff asserts that the debtor's own admissions in pleadings and depositions require an entry of summary judgment, regardless of how this Court construes Justice Cahn's decision. In ¶ 22 of his amended answer in the New York proceeding, the debtor made the following admission:

22. In the winter and spring of 1973 the activity in the Drayer's checking account with plaintiff increased radically. Mr. Drayer began writing large checks on uncollected funds, at the behest of one James E. Corr, III, with the full knowledge, consent, acquiescence and approval of the plaintiff. Both plaintiff and Mr. Drayer wished to aid the business ventures of Mr. Corr, who was at the time widely regarded as a dynamic and successful businessman. Both the plaintiff and Mr. Drayer cooperated with Mr. Corr's apparent efforts to take advantage of the "float" between New York and Florida banks which constitutes a common form of short-term unsecured loan when it works in favor of the customer, but which usually works in favor of the banks. Millions of dollars in checks were in fact paid by Mr. Corr. On information and belief, such transactions worked to the plaintiff's benefit, and plaintiff sought further benefit for itself by cooperating with Mr. Corr.

The debtor has in various pleadings admitted that he wrote checks against checks deposited in his account before they were collected. The plaintiff argues that the debtor's admissions are sufficient for this Court to make a finding of fraud and nondischargeability under § 523(a)(2)(A).

However, the debtor asserts that Marine has never proven that he acted with the requisite fraudulent intent. In his affidavit, the debtor states that although he wrote the checks which created the overdraft, he had made deposits of checks from one James Corr, which the debtor expected to be collected. He also claims that the bank was aware of the overdrafts and they were created with the bank's consent. The debtor states that he fully expected the check overdrafts to be covered.

A motion for summary judgment can only be granted if there exists no genuine

issue of fact. *Mack v. Cape Elizabeth School Bd.*, 553 F.2d 720, 722 (1st Cir.1977). Further, all inferences contained in the affidavits and exhibits must be viewed in the light most favorable to the party opposing the motion for summary judgment. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Ferguson v. Omnimedia, Inc.*, 469 F.2d 194 (1st Cir. 1972). Although plaintiff argues that debtor's admitted participation in creating the check overdrafts should lead to a presumption of fraud, the court should not on a motion for summary judgment draw fact inferences. *See Bragen v. Hudson County News Co.*, 278 F.2d 615, 618 (3rd Cir.1960). The issue of fraud and the requisite intent under § 523(a)(2)(A) must be tried by this Court. The plaintiff's motion for summary judgment is denied.

■ The debtor has moved for partial summary judgment as to the amount of indebtedness to Marine which would be found to be nondischargeable. Justice Cahn found that the amount of the overdrafts was $248,893.59. He then deducted from that amount proceeds of the sale of certain stock that Marine held as collateral and $46,000 which had been paid in settlement by a co-defendant in the state court suit. The balance then due the plaintiff was $15,582.44 exclusive of interest and legal fees. Justice Cahn held that the interest claim ($92,607.50) had been computed incorrectly. Therefore, the amount of liability was held to be (i) $15,587.44, plus (ii) the amount of legal fees found by the (New York) Court to be reasonable in connection with the sale of the collateral, and (iii) interest as recomputed. The debtor claims that the $15,587.44 is the only amount which should be declared nondischargeable.

On May 15, 1981, Justice Cahn issued a further order. In that order he confirmed the referee's findings that $12,639.50 was the reasonable value of the legal services rendered in connection with the sale of collateral. Justice Cahn also entered judgment in favor of the plaintiff in the amount of $124,892.42 plus interest at the rate of $20.67 per day after April 15, 1981. If, as the debtor argues, this Court is bound to the determination of liability by the state court, then this would be the amount which this Court must acknowledge.

The plaintiff explains that Justice Cahn had originally erred by applying the payments first to principal rather than to interest. He then changed his approach in the May 15, 1981 order.

This Court is not going to redetermine the issue as to the sale of the collateral nor the determination of a reasonable amount of legal fees involved with that sale. Further, to the extent that the debt to the plaintiff is determined to be nondischargeable, interest would be permissible to compensate the plaintiff for the loss of the use of the rightfully due monies. *In re Spector*, 22 B.R. 226, 233 (Bkrtcy.N.D.N.Y.1982).

Defendant's cross motion for summary judgment is denied in part because there exists a genuine issue of fact as to the amount of interest. In its complaint, plaintiff claimed it was owed $132,187.52, which is also the amount listed in the debtor's petition. The court is inclined to find that this is the amount of liability which may or may not be dischargeable. The only factual issue this Court will consider is whether the interest due has been correctly determined after Justice Cahn's order of May 15, 1981. The court will not rehear the issue of the attorney's fees of $12,639.50 and those fees are included as part of the debt.

■ Plaintiff in its complaint has also requested relief from stay so that it could be permitted to go forward with the New York Supreme Court's reference for the determination of legal fees due in the original New York action. On December 8, 1981, the Appellate Division of the Supreme Court reversed Justice Cahn's denial of a request for a further reference to hear and report on the question of further reasonable fees by Marine. The reference for the determination of further attorney's fees was stayed by the filing of the Chapter 7 petition. Marine is apparently seeking attorney's fees incurred in litigating the original New York proceeding. The stay will remain in effect until this Court determines whether or not the debt is nondischargeable. Further, after trial, both parties will

be given the opportunity to argue that if this Court were to determine that the debt was nondischargeable, whether or not attorneys' fees in pursuing that liability would be dischargeable.

A pre-trial will be held on this matter on April 13, 1983, at 3:00 p.m.