UNITED STATES of America,
Plaintiff-Appellant,

v.

EASTERN AIR LINES, INC.,
Defendant-Appellee.

No. 85-5808.

United States Court of Appeals,
Eleventh Circuit.

July 9, 1986.
As Amended Aug. 25, 1986.

Leon B. Kellner, U.S. Atty., Jonathan Goodman, Asst. U.S. Atty., Miami, Fla., Anthony J. Steinmeyer, Appellate Staff, Michael Kimmel, Civil Div., Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Mary Kogut-Equels, Carmen L. Leon, Miami, Fla., for defendant-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and TUTTLE, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this case, the district court granted summary judgment to Eastern Air Lines, Inc., ruling that the Federal Aviation Administration's oral directive to air carriers to physically inspect all bottles revealed by x-ray equipment in carry-on baggage constituted an unauthorized amendment to controlling regulations. We reverse.

## FACTS

In 1983, after a series of aircraft hijackings in southern Florida, the Federal Aviation Administration (FAA) advised air carriers that section IIC2 of the FAA-approved and mandatory security programs required checkpoint personnel to physically inspect bottles and containers in carry-on baggage

revealed by x-ray. The FAA acted in response to the use of gasoline and other incendiary materials to accomplish hijackings. FAA officials observed that airline security agents were not taking adequate steps to deal with this type of threat.

Section IIC2 requires x-ray inspection of carry-on baggage; IIC2 states as follows:

The x-ray inspection method requires the use of an adequately trained operator. Whenever the operator sees on the display an image that is or may conceal a weapon, explosive or incendiary device or a dangerous object, the hand carried item must then undergo physical inspection.[1]

Eastern Air Lines refused to comply with the oral directive to physically inspect bottles. During the hijack emergency and after the oral announcement, a special team of FAA inspectors, some brought to Miami, Florida, for that purpose, monitored the carriers' compliance. Using the team's observations and case-by-case evaluations, the FAA inspectors identified 112 specific violations of the physical inspection requirement.[2]

Eastern contended that a requirement to physically inspect bottles constituted an amendment to section IIC2. Eastern stated that it would comply with the requirement if a written amendment of the security program were issued, as was done in June, 1983, when the FAA instituted a requirement of special screening of passengers meeting the FAA-approved hijack profile. Eastern eventually voluntarily complied with the oral directive.

The FAA never issued a written directive. At a July 15, 1983, meeting, the air carriers and the FAA reached an understanding concerning the future enforcement of security screening procedures. The FAA agreed to no longer require that all bottles be inspected, and the air carriers agreed to have management more involved in the security screening operations.

After Eastern Air Lines refused to pay penalties for the alleged violations, the FAA filed suit in district court, alleging 56 specific violations and seeking fines of $1,000 per violation. The FAA filed its claims for civil penalties pursuant to 49 U.S.C. § 1473 and 49 U.S.C. § 1471(a). Title 49 U.S.C. § 1471(a) provides, in pertinent part, for a civil penalty "not to exceed $1,000 for each ... violation" of a "rule, regulation, or order...." Title 49 U.S.C. § 1473 provides, in pertinent part, for venue choices and procedures with respect to civil penalties.

Eastern Air Lines moved for summary judgment based on affidavits submitted by officials of the FAA and employees of Eastern Air Lines. The affidavits primarily concerned the parties' understanding of whether the oral directive was an amendment to or a continuation of a process of informal consultation and interpretation of an existing regulation. The district court granted Eastern's summary judgment motion, concluding "as a matter of law that defendant's approved security program did not require the type of inspection asserted by plaintiff's oral directive and that the directive constituted an amendment of the security program which was required by plaintiff's own practices and procedures to be in writing...." The court denied the FAA's motion for reconsideration of the order granting summary judgment.

## SUMMARY OF CONTENTIONS

FAA contends that the inspection requirements in section IIC2 cover bottles or containers that may conceal explosive or incendiary materials revealed by x-ray in carry-on baggage. FAA also contends that

---

1. Federal regulation requires each air carrier to maintain an FAA-approved security program. 14 C.F.R. § 108.5(a). The provisions of air carrier security programs are incorporated as binding regulations through 14 C.F.R. § 108.-9(a). The airline security programs are not published in the Federal Register because availability is generally restricted to persons having an operational need to know. *See* 14 C.F.R.

108.7(c)(4); 5 U.S.C. 552(b)(7)(E); *Crooker v. BATF,* 670 F.2d 1051 (D.C.Cir.1981) (en banc).

2. According to an affidavit of an FAA employee, in each alleged violation one to twelve bottles of liquid otherwise unidentifiable appeared on the x-ray screen.

because its interpretation is reasonable and necessary to secure the safety of the traveling public, due deference to its interpretation is proper. *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). The FAA also argues that the district court abused its discretion by rendering summary judgment without sufficient reasons. The FAA finally argues, alternatively, that if the requirement to search bottles constituted an amendment of airline security programs, it was not required to be in writing.

Eastern contends that the custom or practice for conducting inspections has not been to physically inspect bottles; therefore, a departure from the customary method of inspection constitutes an amendment to section IIC2. Eastern also argues that the FAA is not entitled to more than an informal statement of reasons for entering summary judgment. Eastern cites 14 C.F.R. § 108.25(b)(1) and (2) as requiring that an amendment be in writing. As a threshold matter, Eastern argues that this court lacks jurisdiction because the FAA's rule 59 motion for reconsideration was invalid and, consequently, the notice of appeal was filed more than sixty days after entry of judgment.

## DISCUSSION

### A. Jurisdiction

██ Eastern contends that this court lacks jurisdiction because the FAA's notice of appeal was filed more than sixty days after entry of the order which is the subject of this appeal. Time limits for filing notices of appeal are mandatory and jurisdictional. *Glass v. Seaboard Coastline Railroad Co.,* 714 F.2d 1107 (11th Cir.1983).

After summary judgment was entered, the FAA made a timely rule 59 motion for reconsideration. The FAA did not refer to its motion to reconsider as a motion to amend judgment; nomenclature, however, is not controlling. *See Lucas v. Florida Power & Light Co.,* 729 F.2d 1300, 1302 (11th Cir.1984). Eastern cites *Blair v. Delta Air Lines,* 344 F.Supp. 367 (S.D.Fla. 1972), *aff'd,* 477 F.2d 564 (5th Cir.1973) (per curiam) for the proposition that rule 59 is

not a vehicle for repetitive reargument or a substitute for an appeal. Eastern argues that because the FAA did not assert new legal theories in its rule 59 motion, the motion was improper. Eastern also asserts that the improper rule 59 motion, though timely filed within ten days of the district court's order, did not toll the sixty-day period for the FAA's appeal to this court. Accordingly, Eastern urges us to dismiss the appeal as untimely.

██ Eastern's position is unpersuasive. The advisory committee notes on rule 59 point out that the rule represents an amalgamation of previous rules regarding petitions for rehearing and motions for new trial. A petitioner is not required to advance new legal theories in a rule 59 motion, and Eastern cites no case for this proposition. All a rule 59 motion need do is request relief which may be granted. *Sea Ranch Association v. California Coastal Zone Conservation Commissions,* 537 F.2d 1058, 1061 (9th Cir.1976). Here, the FAA requested the district court to change its order and deny Eastern summary judgment—relief cognizable by rule 59. *See also Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.,* 784 F.2d 665, 667 (5th Cir.1986) (en banc) (any post-judgment motion to alter or amend the judgment served within ten days after the entry of the judgment, other than a motion to correct purely clerical errors, is within the scope of rule 59(e) regardless of its label). Accordingly, we conclude that the FAA's motion for reconsideration was a proper rule 59 motion. Consequently, its appeal was timely, and this court has jurisdiction.

### B. Section IIC2

In considering Eastern's argument, we have borne in mind the purposes of subchapter VI of the Federal Aviation Program, Safety Regulation of Civil Aeronautics, 49 U.S.C. §§ 1421–1432 (1983). *See Kifer v. Liberty Mutual Ins. Co.,* 777 F.2d 1325 (8th Cir.1985) (concerning statutory construction). The spirit of the subchapter governing safety regulation of civil aero-

nautics is flexibility, strengthened by recognition of a statutory duty by air carriers to perform services as safely as possible. The Secretary of Transportation is empowered to grant exemptions from any rule or regulation if that official finds the action to be in the public interest. 49 U.S.C. § 1421(c). "In prescribing standards, rules, and regulations ... the Secretary of Transportation shall give full consideration to the duty resting upon air carriers to perform their services with the highest possible degree of safety in the public interest...." 49 U.S.C. § 1421(b).

The statutory scheme anticipates a common effort by air carriers and the agency to respond to changing circumstances in aviation to ensure a safe flying environment. *See Landy v. FAA*, 566 F.Supp. 921, 923, 16 Av.Cas. (CCH) 18,165, 18,166 (S.D.N.Y.1982) (FAA must depend largely on voluntary adherence to rules it promulgates). The general language of section IIC2 is consistent with the need for regulatory flexibility and cooperation. The Federal Aviation Act mandates issuance of FAA regulations requiring that all property be screened, 49 U.S.C. § 1356(a), and the implementing regulation requires that the security program "prevent or deter the carriage aboard airplanes of *any* explosive or incendiary device." 14 C.F.R. § 108.9(a) (emphasis added). The purpose of the Act—to safeguard flights and specifically to maintain security programs capable of preventing smuggling of explosives aboard aircraft—presupposes application of general language to changing forms of the known threats to safety. It would be potentially disabling to impose upon the FAA a requirement to draft regulations that describe in detail the many possible variations that threats to safety may take in a changing world.

■ We agree with the FAA that the language of section IIC2, by its generality, encompasses bottles that may contain gasoline or other harmful substances. This meaning is plausible. In effect, Eastern's contention, if accepted, would result in FAA being required to publish an itemized list specifying all items that must be physically inspected and implicitly excluding those not listed. Such a position overlooks the purpose and propriety of the general language of section IIC2. In the context of air safety regulation, the need is to promulgate a general requirement, the meaning of which may evolve in response to changing circumstances and the exigencies of threats to safety. The words of the regulation belie a narrow interpretation limited by industry practice. Eastern does not cite any history demonstrating that a contemporaneous understanding when the regulation was enacted narrows the broad language, but instead rests on the supposed industry practice after enactment of IIC2.

No history indicates that the FAA had in mind a particular catalog of dangerous objects that excluded all others. The best evidence of the administrative intent is the general language that argues forcefully against an itemized list. *See Birmingham Trust National Bank v. Case*, 755 F.2d 1474 (11th Cir.1985) (starting point for construction of a statute is its language). To the extent that Eastern seeks to argue that a bottle does not fit the terms of appearing to be a dangerous device, it urges an overly literal interpretation of language. While a bottle is not dangerous in appearance in the sense that a hand grenade or a firearm is, a bottle capable of holding incendiary liquid during a time when hijackers are employing such devices is "an image that is or may conceal a weapon, explosive or incendiary device or a dangerous object." Moreover, FAA guidelines require that unidentifiable objects large enough to conceal a weapon, explosive, or incendiary device *must be subject to physical inspection.* Carry-On Property Screening Guidelines (unpublished) (emphasis added).

Since the language of section IIC2 covers the inspection of bottles, other principles support the action taken by the FAA. An enforcement policy may be varied in time and place according to the likelihood of violation. *Cf. Wayte v. United States*, 470 U.S. 598, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985). "[F]aced with new develop-

ments or in light of reconsideration of the relevant facts in its mandate, [an agency] may alter its past interpretation and overturn past administrative rulings and practice." *American Trucking Assos. v. A.T. & S.F.R. Co.*, 387 U.S. 397, 416, 87 S.Ct. 1608, 1618, 18 L.Ed.2d 847, 860 (1967). The advance oral warning given to air carriers of a stepped-up enforcement process strengthens, rather than undermines, the legitimacy of the FAA's actions to ensure air safety. In concluding that Eastern's objection is primarily to regulation through the use of general language, we have taken Eastern's objection to be that the FAA's interpretation of the language is unreasonable and in defiance of common sense meaning. Certainly, an allegation of a regulatory violation must be tested against a standard of reasonableness; the agency may not be upheld if its interpretation is arbitrary and capricious. *City of Pompano Beach v. FAA*, 774 F.2d at 1541. The FAA's interpretation and application of this pre-boarding security requirement is reasonable. *City of Pompano Beach v. FAA*, 774 F.2d 1529, 1540 (11th Cir.1985); *FAA v. Landy*, 705 F.2d 624, 634–37 (2d Cir.), *cert. denied*, 464 U.S. 895, 104 S.Ct. 243, 78 L.Ed.2d 232 (1983); *Airline Pilots Association v. FAA*, 454 F.2d 1052, 1054 (D.C.Cir. 1971); *United States v. Ozark Airlines, Inc.*, 419 F.Supp. 795, 798 (E.D.Mo.1976).

We hold that the action of the FAA in conducting a program of stepped-up enforcement in response to the crisis of 1983 did not constitute an amendment of section IIC2. Our interpretation rests, however, upon a requirement that the regulation be given a common sense and reasonable meaning. We do not presume on the basis of the record before us that each of the fifty-six charged violations constituted a violation. Likewise, it is inappropriate for us to describe without adjudication in the

district court what the parameters of a reasonable interpretation of section IIC2 constitute, as applied to the violations charged. Section IIC provides generally that physical and x-ray inspections should be "thorough but not unreasonable." Guidelines for carrying out inspections stress "common sense and caution." Carry-On Inspection Guidelines (unpublished). It is possible that some x-ray revealed bottles such as small medicine or perfume bottles, do not constitute a potential threat, while larger bottles constitute a threat. We therefore remand to the district court for a determination based on the facts of the individual charges the specific violations, if any, for which Eastern is liable. In making the determination, the district court should treat with due deference the interpretation of the agency, but should not mechanically adopt an interpretation that exceeds the bounds of reasonableness. The question of reasonableness is a mixed question of law and fact.[3] "The ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Udall v. Tallman*, 380 U.S. 1, 800–01, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625 (1965) (quoting *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700, 1702 (1945)).

Because of our disposition, we need not reach the other issues briefed by the parties. We reverse and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

---

**3.** Eastern has argued that if bottles must be examined, the x-ray machine becomes irrelevant because most bags contain bottles. Therefore, Eastern suggests that inspection of bottles is unreasonable and inconsistent with the regulation requiring x-ray equipment. We note, however, that an FAA official stated in his affidavit that it was not true that virtually all passengers carry some sort of liquid on board the aircraft in their carry-on baggage, as was stated in an affidavit by Eastern's manager of operational security. This is a contested fact not properly determined on summary judgment. To make the legal determination of reasonableness, a full factual record is necessary.