A separate final judgment will be entered declaring:

(a) Either party will have the right to the use of the contiguous parking lot areas to the extent not occupied by guests of the other. The motel guests shall have first use of the spaces located outside their doorways. The restaurant guests shall have first use of the spaces located in front of and to the side of the restaurant.

(b) The rights to use the dumpster and grease trap at its present location will continue with the parties to continue their current cost-sharing arrangement. The parties are directed to draft and submit for the Court's approval, rules for operating the dumpster area within fifteen (15) days from the date of the final judgment.

(c) FMS will have the right of access for delivery trucks to the restaurant property.

(d) The parties shall enter into a Memorandum of Lease, which shall set forth the material terms of the Lease to include a legal description of the restaurant property and a reference to the Court's declaratory judgment entered in this adversary proceeding.

(e) Defendants shall be enjoined from interfering with the quiet enjoyment by FMS to the use of the restaurant consistent with the terms of these findings of fact and conclusions of law.

(f) Each side will bear their own costs and attorney's fees.

**In re PACIFIC FOREST PRODUCTS CORP., Debtor,**

**Colonial Bank, Appellant,**

v.

**Lewis B. Freeman, etc., Appellee.**

**Suntrust Bank, Appellant,**

v.

**Lewis B. Freeman, etc., Appellee.**

No. 05–22061–CIV.

United States District Court, S.D. Florida.

Oct. 17, 2005.

### ORDER GRANTING APPELLANTS' MOTIONS FOR LEAVE TO APPEAL

GOLD, District Judge.

**THIS CAUSE** is before the Court upon Appellants' Motions for Leave to Appeal **[DE 1 and 4]** the Bankruptcy Court's May 3, 2005 interlocutory order granting Trustee's motion for partial summary judgment. In granting partial summary judgment, Bankruptcy Judge Barry S. Schermer ruled that the Debtor acted with "actual intent to hinder, delay or defraud its creditors." [1] Appellants seek interlocutory review of this ruling.

I held oral argument on the Motions for Leave to Appeal on September 30, 2005. Upon review of the parties' arguments, the record, relevant statutes, and case law, I grant Appellants' Motions for Leave to Appeal.

### I. Background Facts

On February 14, 2001, three creditors of Pacific Forest Products Corp. (the "Debtor") filed an involuntary petition for bankruptcy relief under Chapter 7 of the Bankruptcy Code. On April 5, 2001, the Bankruptcy Court converted the case to a Chapter 11 Reorganization.

On July 10, 2002, the Bankruptcy Court entered an Order confirming the Debtor's Amended Liquidating Plan, and appointing Lewis B. Freeman ("Trustee") as the Liquidating Trustee. The Plan transferred to the Trustee the right to bring avoidance actions under the Bankruptcy Code.

On February 11, 2003, the Trustee commenced an adversary proceeding against, among others, Appellants Colonial Bank ("Colonial") and SunTrust Bank ("Sun-Trust") (Colonial and SunTrust shall be

Ben H. Harris, III, Mobile, AL, Mark R. Kings, Miami, FL, for Colonial Bank, N.A.

Elliott Scherker, Miami, FL, Richard Bergman, Ft. Lauderdale, FL, Steven Mishan, Miami, FL, for Suntrust Bank.

David C. Cimo, Miami, FL, for Lewis B. Freeman.

1. The Bankruptcy Court Order can be found at Appendix 1 to SunTrust's Motion for Leave to Appeal **[DE 1 to Case Number 05–22062–CIV–GOLD/TURNOFF]**.

referred to collectively as "Appellants"). The Complaint, as amended (the "Complaint"), alleges, *inter alia,* claims against Appellants for the avoidance and recovery of fraudulent transfers under sections 544 and 548 of the Bankruptcy Code, as well as under applicable Florida statutes. The Trustee's theory of recovery includes, *inter alia,* that the Debtor had engaged in a massive check-kiting scheme, and that any transfers made to Appellants pursuant to that scheme were with an actual intent to defraud the Debtor's creditors, and therefore subject to avoidance by the Trustee.

On June 23, 2004, the Trustee filed a Motion for Partial Summary Judgment Regarding Debtor's Actual Intent to Hinder, Delay, or Defraud Creditors (the "Motion for Summary Judgment"). Through the Motion for Summary Judgment, the Debtor sought a declaration that no material facts remained as to the issue of the Debtor's actual intent to hinder, delay or defraud creditors through operating the extensive check-kiting scheme. In support of its Motion for Summary Judgment, and in response to the Bankruptcy Court's request for clarification, the Debtor submitted proposed findings of fact and conclusions of law.

On April 13, 2005, the Bankruptcy Court held a hearing on the Motion for Summary Judgment, and on May 3, 2005, entered findings of fact and conclusions of law that established that the Debtor acted with "actual intent to hinder, delay or defraud creditors" by engaging in an extensive check-kiting scheme (the "Bankruptcy Court Order"). The Bankruptcy Court Order was entered on the docket on May 6, 2005.

On May 16, 2005, Appellants each filed a motion for rehearing and reconsideration (the "Motions for Rehearing") of the Bankruptcy Court's Order, contesting a number of the Bankruptcy Court's findings of fact and conclusions of law, including the Bankruptcy Court's finding that the check kiting scheme at issue in this case was, *per se,* fraudulent. On May 25, 2005, the Bankruptcy Court denied Appellants' Motions for Rehearing.

On June 3, 2005 and June 6, 2005, Appellants SunTrust and Colonial, respectively, filed motions for leave to appeal the Bankruptcy Court's Order (collectively, the "Motions for Leave to Appeal"). On August 2, 2005, this Court consolidated both actions under Case Number 05–22061–CIV–GOLD/TURNOFF because they raise the same issues. [**DE 4**].

The Trustee filed responses to Appellants' Motions for Leave to Appeal on August 30, 2005. [**DE 6**].[2] In the Opposition, the Trustee argues that the Motions for Leave to Appeal were untimely, and that the Appellants have not satisfied the standard for interlocutory review. On September 1, 2005, SunTrust filed a reply in support of its Motion for Leave to Appeal. [**DE 9**].

## II. Jurisdiction

Before I address Appellants' dual grounds for appeal, I must first consider whether this Court has subject matter jurisdiction over the instant appeal.

**2.** The Trustee filed separate oppositions to Appellants' Motions for Leave to Appeal. The only distinction between the two oppositions relates to the Appellants' separate filing dates for moving for leave to appeal. I address that issue briefly in footnote five below. Given the similarities between the arguments raised in both responses, I will address them in omnibus fashion. For simplicity's sake, where the term "Opposition" is used, it shall refer to the Trustee's opposition to SunTrust's Motion for Leave to Appeal, but apply as to both Appellants.

28 U.S.C. § 158(a) imparts upon the district courts jurisdiction to hear appeals from:

(1) final judgments, orders, and decrees;

(2) interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and

(3) with leave of the court, from other interlocutory orders and decrees; and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

Appellants recognize that the Bankruptcy Court Order is interlocutory and request the Court to assert jurisdiction under 28 U.S.C. § 158(a)(3). For the reasons set forth below, I conclude that this Court has jurisdiction to consider an immediate appeal of the Bankruptcy Court Order, and I grant Appellants' Motions for Leave to Appeal. *Valley Drug Co. v. Geneva Pharm., Inc.*, 344 F.3d 1294, 1295 (11th Cir.2003) (partial summary judgment on interlocutory appeal), reh'g and reh'g en banc denied 88 Fed.Appx. 388 (11th Cir.2003), cert. denied 125 S.Ct. 308 (2004); *Foothill Capital Corp. v. Official Unsecured Creditors' Cmty. of Midcom Commc'ns Inc.*, 246 B.R. 296, 299 (E.D.Mich.2000) (exercising discretion to allow interlocutory appeal of bankruptcy court order granting partial summary judgment pursuant to 28 U.S.C. § 158(a)(3)).

## III. Appellants' Motions for Leave to Appeal Were Timely

In reviewing the timeliness of Appellants' motions for leave to appeal, I must consider Federal Rule of Bankruptcy Procedure ("FRBP") 8002.[3] Rule 8002(a) requires a party to file a notice of appeal with the clerk of the bankruptcy court "within 10 days of the date of the entry of the judgment, order, or decree appealed from." But if the party moving for appeal files one of a number of enumerated motions, the time for appeal "runs from the entry of the order disposing of the last such motion outstanding." Fed. R. Bankr.P. 8002(b).

▮ The list of motions that toll the time to appeal include motions:

(1) to amend or make additional findings of fact under Rule 7052, whether or not granting the motion would alter the judgment;

(2) to alter or amend the judgment under Rule 9023;

(3) for a new trial under Rule 9023; or

(4) for relief under Rule 9024 if the motion is filed no later than 10 days after the entry of judgment.

Fed. R. Bankr.P. 8002(b). If an appeal is not timely filed, the district court has no jurisdiction over it. *In re Davis*, 237 B.R. 177, 180 (M.D.Ala.1999) (citing *In re Morrow*, 564 F.2d 189, 190 (5th Cir.1977)), remanded to 243 B.R. 127 (Bankr.M.D.Ala. 1999).

Appellants assert that their Motions for Rehearing were motions under Rule 59(e) of the FRCP, as incorporated into Rule 9023 of the FRBP, and therefore tolled the appellate clock from ticking until disposition of the Motions for Rehearing under FRBP 8002(b)(2).[4] Accordingly, Appel-

---

**3.** The Federal Rules of Civil Procedure may be denoted as "FRCP" throughout this Order.

**4.** FRCP 59(e) provides that, "[a]ny motion to alter or amend a judgment shall be filed no

lants contend that their Motions for Leave to Appeal, filed within ten days of the Bankruptcy Court's order denying their Motions for Rehearing, are timely.

■ The Bankruptcy Court Order was signed on May 3, 2005, and entered on the Bankruptcy Court docket on May 6, 2005. Appellants filed their Motions for Rehearing on May 16, 2005. The Trustee initially contends that the Motions for Rehearing were untimely because they were filed more than ten days after the Bankruptcy Court ruled, which was on May 3, 2005. This Court finds, however, that an order is *entered* when it appears on the clerk's docket, and thus Appellants' Motions for Rehearing were timely because they were filed within ten days of the Bankruptcy Court Order's appearance on the docket. *United States v. Henry Bros. P'ship (In re Henry Bros. P'ship)*, 214 B.R. 192, 195 (8th Cir. BAP 1997); *Williams v. EMC Mortgage Corp. (In re Williams)*, 216 F.3d 1295, 1296 (11th Cir.2000) (signifying entry of the bankruptcy court's order on the docket as the starting point for the ten-day period for appeal); *Balcor Pension Invs. v. Wiston XXIV, Ltd. P'ship (In re Wiston XXIV, Ltd. P'ship)*, 172 B.R. 647, 652 (D.Kan.1994) (ten-day period for appeal

runs from time clerk enters bankruptcy order).[5]

■ In any event, it does not appear that Appellants' Motions for Rehearing would be untimely under any circumstances. It is well-established that it is within a bankruptcy judge's discretion to reconsider any interlocutory order made prior to the entry of final judgment. *Piper Aircraft Corp. v. Calabro (In re Piper Aircraft Corp.)*, 169 B.R. 766, 771 (Bankr. S.D.Fla.1994), aff'd 168 B.R. 434 (S.D.Fla. 1994), aff'd as modified sub nom. *Epstein v. Official Comm. of Unsecured Creditors of Estate of Piper Aircraft Corp.*, 58 F.3d 1573 (11th Cir.1995). Accordingly, a party who seeks reconsideration of an interlocutory bankruptcy order need not move for rehearing within ten days because "the ten-day limitation of Rule 59(e) does not apply." *See United States v. Martin*, 226 F.3d 1042, 1047–48 (9th Cir.2000).

■ The Trustee seizes on this language in making his next point, arguing that Rule 59(e) does not apply to "motions for reconsideration of interlocutory orders from which no immediate appeal may be taken," and that therefore the tolling benefits supplied by Bankruptcy Rule 8002(b)(2) do not apply to the appeal of the

---

later than 10 days after entry of the judgment."

**5.** The Trustee challenges Colonial's Motion for Leave to Appeal as untimely because it was allegedly filed *"more than ten days* after entry of the Order Denying Rehearing,..." (Trustee's Opposition to Colonial's Motion for Leave to Appeal, p. 6) (emphasis in original). As noted above, an order is entered when it appears on the docket. The Bankruptcy Court's Order denying Colonial's Motion for Rehearing was entered on May 25, 2005. Pursuant to Federal Rules of Appellate Procedure, which govern here, Colonial's Motion for Leave to Appeal was due on June 8, 2005. Fed. R. Fed. R.App. P. 26(a) (when "computing any period of time specified in these rule or in any local rule, court order, or applicable

statute: (1) Exclude the day of the act, event, or default that begins the period. (2) Exclude intermediate Saturdays, Sundays, and legal holidays when the period is less than 11 days, unless stated in calendar days. (3) Include the last day of the period, unless it is a Saturday, Sunday, legal holiday, or—if the act to be done is filing a paper in the court—a day on which the weather or other conditions make the clerk's office inaccessible."); *Abraham v. Volkswagen of America, Inc.*, No. Civ–90–725T, 1991 WL 89913, at *1 (W.D.N.Y. May 28, 1991) (applying Federal Rule of Appellate Procedure 26(a) to a motion for leave to appeal pursuant to 28 U.S.C. § 1292(b)). Therefore, Colonial's Motion for Leave to Appeal, filed on June 6, 2005, was timely.

non-final Bankruptcy Court Order (Opposition, p. 6).[6] The Trustee relies upon a number of cases from outside the bankruptcy context in support of this contention. *See e.g., Martin,* 226 F.3d at 1048 (affirming the trial court's decision that the Government's motion for reconsideration of an order granting a prisoner's § 2255 motion to vacate sentence, filed eighty-three days after the order granting the motion to vacate, was timely because the order was not final); *Dayoub v. Penn–Del Directory Co.,* 90 F.Supp.2d 636, 637 (E.D.Pa.2000) (recognizing that Rule 59(e) does not apply to review of interlocutory orders because district courts have the "inherent power to reconsider interlocutory orders. . . .") (citations omitted); *Wagoner v. Wagoner,* 938 F.2d 1120, 1122 n. 1 (10th Cir.1991) (stating that "motion for reconsideration was nothing more than an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment.").

However, these cases, and other ones cited by the Trustee, are limited to a consideration of whether a party violated Rule 59(e)'s prohibition on moving for reconsideration of an order more than ten days after that order was entered. For example, the Trustee cites *Riggs v. Scrivner, Inc.,* for the proposition that Rule 59(e) "does not call into play the timing and tolling considerations attendant upon motions to alter or amend judgment under Fed.R.Civ.P. 59(e)." 927 F.2d 1146 (10th Cir.1991) (Opposition, p. 7). This statement mischaracterizes the *Riggs* decision. *Riggs* merely held that a party may move for reconsideration of any interlocutory order without offending the portion of Rule 59(e) that requires such a motion to be filed within ten days after entry of a judgment. *Id.* at 1148. It says nothing about Rule 59(e)'s effect on tolling the time for appeal of an interlocutory order. Indeed, that issue was not even raised in the *Riggs* case. Likewise, the only other case cited by the Trustee on this specific point, *Anderson v. Deere & Co.,* 852 F.2d 1244, 1246 (10th Cir.1988), is also limited to the discrete issue of whether a motion for rehearing of an interlocutory order must be filed within ten days of the order's entry. It, too, is silent as to Rule 59(e)'s role in tolling the time for filing a motion for leave to appeal.

None of the Trustee's cases address the issue here, which is whether the filing of a motion for rehearing tolls the time for appealing the decision being reheard. Indeed, federal case-law cited by Appellants, and additional authority that I have reviewed, demonstrate that courts routinely characterize motions to rehear/reconsider interlocutory orders as Rule 59(e) motions. *Public Serv. Co. of N.H. v. Hudson Light & Power Dep't,* 938 F.2d 338, 340 n. 5 (1st Cir.1991) (acknowledging in a footnote that the defendants' motion for reconsideration of the bankruptcy court's order granting partial summary judgment was a 59(e) motion); *Martinez v. Bohls Equip. Co.,* No. SA–04–CA–0120–XR, 2005 WL 1712214, at *1 (W.D.Tex. July 18, 2005) (applying Rule 59(e) standards to motions for reconsideration of interlocutory orders); *Citizens Fed. Bank v. Cardian Mortgage Corp. (In re Cardian Mortgage Corp.),* 122 B.R. 255, 262 (Bankr.E.D.Va.1990) (accepting review of defendant's Rule 59(e) motion for rehearing of the court's own order partially granting/partially denying summary judgment). Such motions automatically toll the time to appeal pending resolution. *Abraham v. Aguilar (In re Aguilar),* 861 F.2d 873, 875 (5th Cir.1988) (per curiam)

**6.** The parties agree, and it is reasonable to do so, that the Bankruptcy Court Order granting

partial summary judgment is interlocutory. *Valley Drug Co.,* 344 F.3d at 1295.

(finding that motion to reconsider pursuant to FRCP 59(e) tolls the time for appeal through operation of FRBP 9023).

Undoubtedly, the Rules themselves create some confusion as to precisely when a party must seek leave to appeal an interlocutory order when that order is pending on rehearing. On the one hand, case-law cited by the Trustee suggests that Rule 59(e) does not apply to motions to reconsider non-final, or interlocutory judgments. From this finding, the Trustee concludes that the filing of a motion to rehear an interlocutory order does not toll the time for appeal through operation of FRBP 8002(b) and 9023. On the other hand, courts have treated motions to reconsider interlocutory orders as tolling the time for appeal of those orders pursuant to Rule 59(e) itself.

I reject the analysis put forth by the Trustee not only because it is unsupported by legal authority, but also because it lacks credibility from a policy standpoint. Were the Court to adopt the Trustee's analysis, then a party would be forced to move for both rehearing and leave to appeal within ten days of entry of an interlocutory order.

The party would essentially lose the procedural right to rehearing unless it could somehow compel the lower court to rule before the tenth day after entry of its order. This result is not only illogical, but, as explained above, devoid of legal merit.

By contrast, the approach advanced by Appellants is more sensible. It allows a lower court to review its own decision before a party can seek relief from that decision on appeal. It reinforces the *Aguilar* declaration that there is "no useful purpose in requiring an appeal to be filed where a motion for reconsideration, which may obviate the need for an appeal, has been brought within the time period to take an appeal." 861 F.2d at 875. Any other conclusion would result in the unnecessary waste of litigant and court resources, while at the same time rendering the moving party's right to rehearing a virtual nullity.[7]

I conclude that Appellants' Motions for Rehearing of the Bankruptcy Court Order appropriately tolled the time for Appellants to move for leave to appeal until ten days from the Bankruptcy Court's ruling

---

**7.** The Trustee takes issue with the form of Appellants' Motions for Rehearing, arguing that they are not substantively proper Rule 59(e) or 60(b) motions. It is clear in this Circuit that a motion to reconsider will not lose its Rule 59(e) characterization based upon mere formalities. In *United States v. Eastern Air Lines, Inc.*, 792 F.2d 1560, 1562 (11th Cir.1986), the Eleventh Circuit held that a notice of appeal filed sixty days after entry of a summary judgment order was not untimely due to a pending motion to reconsider that order. The court dismissed arguments that the motion to reconsider was ineffective to toll the appellate time frame because it was not titled as a Rule 59 "motion to amend judgment," and because it did not raise new legal theories. *Id.* The court simply said that for a motion to reconsider to toll the time for filing a notice of appeal, the motion need only "request relief which may be granted." *Id.* (citing *Harcon Barge Co., Inc. v. D & G Boat*

*Rentals, Inc.*, 784 F.2d 665, 667 (5th Cir. 1986) (en banc) (noting that any post-judgment motion to alter or amend, other than a motion directed at clerical errors, is timely if filed within ten days of entry of judgment, and is properly categorized as a Rule 59(e) motion)), cert. denied 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986). Nor is it relevant to a tolling analysis that a motion for reconsideration is filed in bad faith. Even then, a court should not sanction the moving party by finding that the motion fails to toll the time on appeal; rather, the court should, if necessary, impose the typical sanctions available under the FRCP and other applicable federal law. *Law Offices of Geraci v. Bryson (In re Bryson)*, 131 F.3d 601, 603–04 (7th Cir.1997) (reversing district court's ruling that motion for reconsideration filed in bad faith did not toll the time for appealing the underlying order).

on those Motions. *In re Mike*, 796 F.2d at 383; *In re Aguiar*, 311 B.R. 129, 134 (1st Cir. BAP 2004) (noting that "a motion for relief from judgment tolls the appeal period and relates back to the underlying order when filed within the ten-day appeal period."); *Balcor Pension Invs.*, 172 B.R. at 651 (reasoning that where a motion to reconsider calls into question issues to be raised on appeal, the time for appeal is stayed until resolution of the motion for reconsideration). Since Appellants moved for leave to appeal the Bankruptcy Court Order within ten days of the Bankruptcy Court's order denying rehearing, the Motions for Leave to Appeal are timely.

## IV. Motions for Leave to Appeal are Granted

■■ Interlocutory review is generally disfavored for its piecemeal effect on cases. *United States v. MacDonald*, 435 U.S. 850, 853, 98 S.Ct. 1547, 1549, 56 L.Ed.2d 18 (1978); *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1276 (11th Cir.2000). However, a district court may grant interlocutory review of a bankruptcy order if the subject issue (1) involves a controlling question of law, (2) as to which there is a substantial ground for difference of opinion, and (3) is such that an immediate appeal would advance the ultimate termination of the litigation. *Babic v. Ford Motor Credit Corp. (In re Ashoka Enters., Inc.)*, 156 B.R. 343, 346 (S.D.Fla.1993); *Auto Dealers Group v. Auto Dealer Servs., Inc. (In re Auto Dealer Servs., Inc.)*, 81 B.R. 94, 96 (M.D.Fla.1987); *American Cabinets & Woodcrafting Corp. v. Polito Enters., Inc. (In re American Cabinets & Woodcrafting Corp.)*, 159 B.R. 969, 971 (M.D.Fla.1993).[8] If the party moving for

leave to appeal fails to establish any of these three elements, then leave must be denied. *Celotex Corp. v. AIU Ins. Co. (In re Celotex Corp.)*, 187 B.R. 746, 749 (M.D.Fla.1995) (citing *Foster Sec., Inc. v. Sandoz (In re Delta Servs.)*, 782 F.2d 1267, 1272 (5th Cir.1986)). After applying the elements to this case, I conclude that leave to appeal should be granted.

### A. Controlling Question of Law

■ To satisfy this portion of the standard, the movant must demonstrate that there is a question of *law*, and it is *controlling*. *Ahrenholz v. Bd. of Tr. of the Univ. of IL*, 219 F.3d 674, 675 (7th Cir.2000) (emphasis in original). Indeed, an issue meets this exacting standard if it deals with a question of "pure" law, or matters that can be decided "quickly and cleanly without having to study the record." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258, 1260–62 (11th Cir.2004) (finding that because the issues presented involved application of the facts to the law, the movant could not prove a "controlling question of law") (quoting *Ahrenholz v. Bd. of Tr. of the Univ. of IL*, 219 F.3d 674, 677 (7th Cir.2000)); *see also Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1252–53 (11th Cir.2003) (granting interlocutory review of whether the district court had supplemental jurisdiction over class members who did not meet amount in controversy benchmark), aff'd, 125 S.Ct. 2611 (2005); *Tucker v. Fearn*, 333 F.3d 1216, 1218 (11th Cir.2003) (granting interlocutory review of whether a nondependent parent may recover loss of society damages for the wrongful death of his minor

---

8. This three-part standard is analogous to that set forth in 28 U.S.C. § 1292(b), which governs appeals from the district court to the circuit court of appeals. *In re Auto Dealer Servs., Inc.*, 81 B.R. at 96; *Celotex Corp.*, 187 B.R. at 749 (M.D.Fla.1995) ("[i]n determining when to exercise this discretionary authority, a district court will look to the standards which govern interlocutory appeals from the district court to the court of appeals pursuant to 28 U.S.C. § 1292(b).").

child under general maritime law), reh'g and reh'g en banc denied, 82 Fed.Appx. 216 (11th Cir.2003), cert. denied, 540 U.S. 1149, 124 S.Ct. 1147, 157 L.Ed.2d 1043 (2004).

■ The "antithesis of a proper § 1292(b) appeal is one that turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence." 381 F.3d at 1259. Instead, a controlling question is one that rises from the details of the case to a place of relevance among similar cases. *Id.; see also Auto Dealer Servs., Inc.,* 81 B.R. at 96 (advising that a question is controlling not just because it determines the case at issue, but it must also dispose of a "wide spectrum of cases."); (quoting *Federal Deposit Ins. v. First Nat'l Bank of Waukesha,* 604 F.Supp. 616, 620 (E.D.Wis.1985)).

■ Appellants argue that the Bankruptcy Court Order raises a question of pure law: namely, whether a check kite demonstrates, *per se,* an intent to defraud. The Trustee counters that the Bankruptcy Court's ruling was broader than Appellants suggest, and was not dependent upon a wholly legal conclusion; instead, the Trustee contends that the Bankruptcy Court considered a number of facts before entering summary judgment in the Trustee's favor as to the element of the debtor's "actual intent to hinder, delay or defraud its creditors." In support of its position, the Trustee highlights the sheer breadth of the Bankruptcy Court's Findings of Fact (seventeen full pages), including, for example, the significant de-

terioration of the Debtor's financial situation. In its own words, the Trustee argues that the Bankruptcy Court made a general finding that the Debtor "was engaged in a check kiting scheme to hinder, delay or defraud its creditors, not simply that because it was engaged in a check kiting scheme it must have intended to defraud its creditors." (Opposition, p. 15). As explained more fully below, the Trustee's position is belied by the analysis in the Bankruptcy Court Order itself, which clearly establishes a legal determination that the operator of a check kiting scheme acts, *per se,* with an actual intent to defraud its creditors.

I find that the Bankruptcy Court Order articulates two pure legal conclusions: namely, whether a Ponzi scheme is the equivalent of a check kiting scheme, and whether a check kite establishes, *per se,* an intent to defraud.[9] A number of examples from the Bankruptcy Court Order demonstrate the legal nature of both inquiries, including its reliance upon numerous decisions in which courts have found that a check kiting scheme is essentially a Ponzi scheme. (Bankruptcy Court Order, p. 22). Further, the Bankruptcy Court used a heading titled, "A Check Kite Is Per Se A Fraudulent Scheme." *Id.*

The Bankruptcy Court analyzed the case using legal principles, instead of searching for factual disputes, before reaching summary judgment. First, the Bankruptcy Court analogizes the Debtor's check-kiting scheme to a Ponzi scheme. (Bankruptcy Court Order, pp. 22–25).[10] Second, it ac-

---

**9.** At oral argument, counsel for SunTrust presented these two legal issues as one; nevertheless, I find that the Bankruptcy Court expressly relied upon the preliminary legal conclusion that a Ponzi scheme is equivalent to a check kiting scheme before reaching its ultimate conclusion that a check kite demonstrates, *per se,* an actual intent to defraud.

**10.** The Supreme Court explains by the example that follows the circumstances surrounding a check kite:

> The check kiter opens an account at Bank A with a nominal deposit. He then writes a check on that account for a large sum, such as $50,000. The check kiter then opens an account at Bank B and deposits the $50,000

knowledges the body of case law finding that fraudulent intent may be inferred when a debtor engages in a Ponzi scheme or other "highly questionable conduct." (Bankruptcy Court Order, p. 22) (citing *In re World Vision Enter., Inc.*, 275 B.R. 641, 656 (Bankr.M.D.Fla.2002)). Having taken these two analytical steps, the Bankruptcy Court concludes that, "the Debtor acted with actual intent to hinder, delay or defraud its creditors in effectuating all transfers [to Appellants] in furtherance of the check kiting scheme." (Bankruptcy Court Order, p. 27). In other words, the Bankruptcy Court ruled that a check kiting

scheme is essentially a Ponzi scheme, and that a debtor engaged in a check kite is acting with the intent to defraud creditors, as a matter of law.[11]

Moreover, the Bankruptcy Court Order does not address the factual disputes raised by Appellants in opposing the Trustee's Motion for Summary Judgment. For example, SunTrust disputed each of the "badges of fraud" raised by the Trustee in an attempt to defeat summary judgment by identifying genuine issues of material fact.[12] The Bankruptcy Court Order did not analyze any of these issues in entering summary judgment for the Trustee, which

check from Bank A in that account. At the time of deposit, the check is not supported by sufficient funds in the account at Bank A. However, Bank B, unaware of this fact, gives the check kiter immediate credit on his account at Bank B. During the several-day period that the check on Bank A is being processed for collection from that bank, the check kiter writes a $50,000 check on his account at Bank B and deposits it into his account at Bank A. At the time of the deposit of that check, Bank A gives the check kiter immediate credit on his account there, and on the basis of that grant of credit pays the original $50,000 check when it is presented for collection. By repeating this scheme, or some variation of it, the check kiter can use the $50,000 credit originally given by Bank B as an interest-free loan for an extended period of time. In effect, the check kiter can take advantage of the several-day period required for the transmittal, processing, and payment of checks from accounts in different banks.

*Williams v. U.S.*, 458 U.S. 279, 281, 102 S.Ct. 3088, 3090, 73 L.Ed.2d 767 (1982). A check kiting is accomplished "by taking advantage of the float—that is, the time required for a check deposited in one bank to be physically presented for payment at the bank on which it was drawn." *Federal Sav. Bank v. Union Planters Nat'l Bank (In re Brown)*, 209 B.R. 874, 876 (Bankr.W.D.Tenn.1997). A Ponzi scheme is defined as:

[A] fraudulent investment arrangement in which returns to investors are not obtained from any underlying business venture but are taken from monies received from new

investors. Typically, investors are promised high rates of return, and initial investors obtain a greater amount of money from the ponzi scheme than those who join the ponzi scheme later. As a result of the absence of sufficient, or any, assets able to generate funds necessary to pay the promised returns, the success of such a scheme guarantees its demise because the operator must attract more and more funds, which thereby creates a greater need for funds to pay previous investors, all of which ultimately causes the scheme to collapse.

*In re McCarn's Allstate Fin., Inc.*, 326 B.R. 843, 850 (Bankr.M.D.Fla.2005) (quoting *In re Taubman*, 160 B.R. 964, 978 (Bankr.S.D.Ohio 1993) (citations omitted)).

**11.** The Bankruptcy Court's conclusion relied upon a preliminary finding that Appellants operated a check kite. At oral argument, SunTrust conceded this point for purposes of framing the legal issue in support of its Motion for Leave to Appeal, but it reserved the right to challenge that determination if and when this Court granted leave to appeal. For purposes of this Order, I have assumed that the Debtor engaged in a check kiting operation.

**12.** The Trustee's Motion for Summary Judgment raises the argument that a check kite is, *per se*, a fraudulent scheme. In fact, the Trustee's Motion for Summary Judgment uses the same heading, "A Check Kite Is a Per Se Fraudulent Scheme," that the Bankruptcy Court employs in its Order.

reinforces the conclusion that the Bankruptcy Court relied upon law only in reaching its ruling.

Finally, it is clear that resolution of the legal issues presented would not only impact the parties in this case, but a whole range of cases in which a debtor is accused of operating a check kite. Indeed, if the Bankruptcy Court Order is affirmed, a trustee will automatically meet its burden of proof as to actual intent to defraud in connection with avoidance actions where the debtor operated a check kite. All indications are that the Bankruptcy Court intended its Order to stem from a legal, as opposed to a factual analysis. The Trustee's arguments to the contrary are not supported by the Bankruptcy Court's own words, or the manner in which the Bankruptcy Court analyzed the issues. Therefore, I conclude that Appellants have presented a controlling issue in support of their Motions for Leave to Appeal.

**B. Substantial Ground for Difference of Opinion**

■■■■■ To satisfy this element of the analysis, a movant must normally demonstrate that at least two courts interpret the relevant legal principle differently. *In re Auto Dealer Servs., Inc.,* 81 B.R. at 97. It is simply not enough for interlocutory review that the order for which appeal is sought presents a difficult ruling; nor is it sufficient that the movant can demonstrate a lack of authority on the issue. *Id.* at 96; *Carbotrade SpA v. Bureau Veritas,* No. 92 CIV. 1459(RPP), 1993 WL 60567, at *1 (S.D.N.Y. Mar. 2, 1993) (ruling that an issue of first impression is insufficient to establish that there are substantial grounds for difference of opinion). And where there is controlling authority in the jurisdiction where the order was rendered, there cannot be a substantial difference of opinion. *In re Managed Care Litig.,* Nos.

MDL 1334, 00–1334MDMORENO, 2002 WL 1359736, at *2 (S.D.Fla. Mar. 25, 2002).

■■■ ] In fulfilling its inquiry, a court may consider authority from within and beyond the circuit in which it sits. *Masters, Mates & Pilots Plans v. Lykes Bros. Steamship Co. (In re Lykes Bros. Steamship Co.),* 200 B.R. 933, 938 (M.D.Fla.1996) (finding substantial ground for difference of opinion based upon cases cited in appellants' briefs and case law identified from other jurisdictions); *Managed Care Litig.,* 2002 WL 1359736, at *2 (finding a substantial ground for difference of opinion after considering contradictory decisions "reached by this court and by courts in other circuits."). For example, the District Court for the District of Columbia found substantial ground for difference of opinion on the issue of the scope of disgorgement under the RICO statute after identifying a contrary ruling rendered by the Second Circuit Court of Appeals. *United States v. Philip Morris USA Inc.,* No. 99–2496(GK), 2004 WL 1514215, at *2 (D.D.C. June 25, 2004).

■■■ After a thorough search, I have found no case law from the Eleventh Circuit on the particular legal issues of whether a check kite is a Ponzi scheme, or whether a check kite demonstrates, *per se,* an intent to defraud creditors; indeed, they are both issues of first impression for the Eleventh Circuit. Therefore, I must first determine whether "at least two courts interpret the law differently," *In re Auto Dealer Servs., Inc.,* 81 B.R. at 97, and then weigh the strength of those arguments against the decision by the Bankruptcy Court. *Flor v. BOT Fin. Corp. (In re Flor),* 79 F.3d 281, 284 (2d Cir.1996).

Appellants can satisfy their burden on this element if they can prove that there is a substantial difference of opinion between the Bankruptcy Court's ruling, and the

rulings of other courts. *Philip Morris*, 2004 WL 1514215, at *2 (finding a substantial ground for difference of opinion where one circuit court opinion conflicted with the district court's own ruling, and reflecting that, "[w]hile this Court believes that its analysis is correct, it is obvious that the arguments to the contrary in *Carson* are neither *insubstantial nor frivolous.*") (emphasis added). The *McFarlin* court noted that the court must ask itself whether there is a "substantial dispute about the correctness" of the pure legal issue considered by the lower court. 381 F.3d at 1259.

To meet its burden, SunTrust references one case that wholly rejects both issues raised before this Court.[13] In *Barber v. Union Nat'l Bank of Macomb (In re KZK Livestock, Inc.)*, 190 B.R. 626, 627 (Bankr.C.D.Ill.1996), the trustee brought an avoidance action against the defendant, who had loaned money to the debtor. The debtor's principal operated a check kiting scheme, and he eventually pled guilty to check kiting charges. *Id.* at 627–

28. The trustee argued in a motion for summary judgment that the debtor's principal's plea established *prima facie* evidence of the debtor's intent to "hinder, delay or defraud the Debtor's creditors." *Id.* at 628. The court rejected the trustee's argument, reasoning that while the debtor's guilty plea may have stood as *prima facie* evidence of the debtor's intent to defraud the banks being used for the kiting, it had no bearing on the analysis of whether the kiting was intended to defraud the debtor's other creditors. *Id.* at 629.[14] Appellants contend that *KZK* establishes a difference of opinion as to the issues addressed in the Bankruptcy Court Order. Appellants have cited no other authority directly related to the issues raised below.

Given the dearth of case-law in the Eleventh Circuit, and the degree to which *KZK Livestock* is on point with this case and is neither insubstantial nor frivolous, I find that there is a substantial ground for dif-

**13.** SunTrust also cites a number of cases in which courts have addressed the more general issue of whether a check kite, or similar scheme, is a fraudulent device. Importantly, none of those cases address the central issue in this case, that is, whether a check kite operation establishes, *per se*, an intent to defraud in connection with an avoidance action. *See e.g., In re Model Imperial, Inc.*, 250 B.R. 776, 792 (Bankr.S.D.Fla.2000) (finding *after trial* that an improper scheme by the debtor, *not involving a check kite*, to avoid its lender's credit restrictions by overstating revenues established the debtor's actual intent to defraud); *In re Vitanovich*, 259 B.R. 873, 878 (6th Cir.2001) (finding that a debtor could not discharge the debt of a bank that had been subject to its check kiting scheme because the check kite fit within the definition of actual fraud necessary for a nondischargeability analysis) (citing *United States v. Stone*, 954 F.2d 1187, 1190 (6th Cir.1992)).

**14.** Appellants also cite *Marine Midland Bank v. Drayer (In re Drayer)*, 29 B.R. 831, 834 (Bankr.D.Mass.1983) as demonstrating a dif-

ference of opinion from the Bankruptcy Court's decision. In that case, a bank tried to argue that its debt was nondischargeable because the debtor had operated a check kiting scheme. To establish the requisite fraudulent intent to deceive, the bank relied upon a prior state court judgment in which the debtor was held liable for overdrafts. *Id.* at 834. The bankruptcy court ruled that collateral estoppel did not apply to save the bank from having to prove fraudulent intent to deceive because the state court judgment did not make a finding of fraudulent intent. *Id.* at 834. Importantly, the court noted that:

> While it may be true that check kiting is commonly found to be fraudulent conduct, such a determination was neither made nor was it essential to the finding of liability, and is an issue of fact which has not yet been determined. Because the state court did not make the finding of fraud in fact, collateral estoppel is not appropriate.

*Id.* Appellants cannot rely upon the *Drayer* decision because it admittedly did not reach the issues here.

ference of opinion sufficient to warrant interlocutory review. *In re Pacific Gas & Elec. Co.*, 280 B.R. 506, 515 (N.D.Cal.2002) (finding substantial ground for difference of opinion where appellant cited the most relevant case in support of reversal), rev'd, 283 B.R. 41 (N.D.Cal.2002), rev'd, 350 F.3d 932 (9th Cir.2003), cert. denied, 543 U.S. 956, 125 S.Ct. 454, 160 L.Ed.2d 318 (2004); *Hall v. Synalloy Corp.*, 540 F.Supp. 263, 276 (S.D.Ga.1982) (determining that there was a substantial ground for difference of opinion "given the dearth of Georgia case law on point, ...").

### C. Advance Ultimate Termination of the Litigation

■ Interlocutory appeal is appropriate if determination of the appellate issue will advance the ultimate termination of the litigation. *McFarlin*, 381 F.3d at 1259; *Lykes Bros. Steamship Co.*, 200 B.R. 933, 938 (M.D.Fla.1996). Returning to *McFarlin* again, this requirement means that "resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." 381 F.3d at 1259. Relevant to that analysis is whether a decision on the merits will clarify the issue for other bankruptcy litigants, and otherwise "preclude the need for further appeals of this type which delay the bankruptcy proceedings." *Id.* Following this principle to its logical end, the most compelling grounds for interlocutory review exist when the reversal of an appellate issue would dispose of the entire case. *Stong v. Bucyrus–Erie Co.*, 476 F.Supp. 224, 225 (D.C.Wis.1979) (granting interlocutory review of an order granting partial summary judgment on liability).

■ A court considering interlocutory review must also evaluate the stage of litigation and weigh the disruptive effect of an immediate appeal on the Bankruptcy Court proceedings against the probability that resources will be wasted in allowing those proceedings to go forward. *In re Auto Dealer Servs., Inc.*, 81 B.R. at 97 (citing *Lorentz v. Westinghouse Elec. Corp.*, 472 F.Supp. 954, 956 (W.D.Pa.1979) (declining interlocutory review where discovery had been completed, and four claims still remained to be tried)); *see also McFarlin*, 381 F.3d at 1262 (finding that interlocutory appellate decision would not advance litigation as other claims remained pending). For instance, in the *In re Auto Dealer Servs., Inc.* case, the court declined to take interlocutory review because, among other reasons, an appeal then would not advance resolution of the litigation. 81 B.R. at 97. Instead, the court found that an interlocutory appeal would delay litigation and prove more costly than proceeding to trial because discovery and other pretrial matters were completed. *Id.*

■ Here, the Trustee argues that interlocutory review is unwarranted because numerous other issues remain to be tried. Appellants concede that this Court's interlocutory review of the Bankruptcy Court Order would not end the litigation entirely regardless of my ultimate decision on the merits. In other words, if I take this appeal and reverse the Bankruptcy Court Order, the Trustee is still entitled to prove actual intent to defraud in some other manner.

But I still find that an immediate appeal would hasten the *ultimate* disposition of this case. The discovery period in the case below is still open, and trial is scheduled for April of 2006. In short, there remains much work to be done between the parties before this case goes to trial.

Further, without intervention at this point, resolution of the appellate issues raised herein would be extremely prolonged. As Appellants acknowledge, they retain the right to assert these and any other appellate grounds at a full plenary

appeal following a trial on the merits. This Court will be forced to consider the merits of these appeals at some point. But consideration now bears the benefit of crystallizing the issues at trial, and, importantly, staving off a potential re-trial should this Court reverse the Bankruptcy Court Order later. The ultimate litigation between the parties will be hastened by this Court's grant of interlocutory appeal.

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that:

(1) Appellants' Motions for Leave to Appeal the Bankruptcy Court Order are GRANTED.

(2) The parties shall file their briefs in accordance with Federal Rule of Bankruptcy Procedure 8009.

(3) The Bankruptcy Court proceedings are hereby STAYED pending resolution of the instant appeal.